**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jack E. CHRISTIANS, Defendant–
Appellant,**

**Ruth I. Christians, Defendant–
Appellant.**

Nos. 03–1529, 03–1530.

United States Court of Appeals,
Sixth Circuit.

July 26, 2004.

Julie Ann Woods, Asst. U.S. Attorney, U.S. Attorney's Office, Grand Rapids, MI, for Plaintiff–Appellee.

Robert Alan Jones, Las Vegas, NV, for Defendant–Appellant.

Before MARTIN and SUTTON, Circuit Judges; and HOLSCHUH, District Judge.*

SUTTON, Circuit Judge.

A jury convicted Jack and Ruth Christians of willfully attempting to evade or defeat income taxes due on a 1995 sale of real property in violation of 26 U.S.C. § 7201. On appeal, the Christians make the following arguments: (1) the proof offered at trial improperly differed from the charges in the indictment; (2) the Government offered insufficient evidence to convict them; and (3) the district court im- properly instructed the jury. As none of these challenges rises to the level of re- versible error, we affirm.

## I.

In 1995, Meijer, Inc., a large retailer, entered into negotiations with the Chris- tians for the purchase of their Michigan home and an accompanying 20–acre tract of land. On the day before Meijer made its final offer of approximately $3.1 million, the Christians created Cornerstone Man- agement Trust, naming themselves as trustees, and deeded their property to the trust for $10. The Christians accepted Meijer's $3.1 million offer.

A few days before the closing on the land sale, the Christians created Ottawa Trust, again naming themselves as trus- tees. After receiving a check written to the Cornerstone Management Trust for $3,072,699.94, the Christians deposited the funds in Ottawa Trust's account. In the months following the sale, the Christians moved most of the money to Barclays Bank in the Cayman Islands, ultimately sending over $3 million there.

On April 15, 1996, the Christians filed their individual IRS Form 1040, which omitted any reference to the real-property sale or to the gain realized from it. The Christians also filed an IRS Form 1041 for Cornerstone Management Trust. This re- turn disclosed the property sale, calculated the tax due at over $1.1 million, and was signed by Jack Christians. Instead of paying the tax, however, Jack Christians attached a disclaimer, which read in part: "The assessment and payment of income taxes is voluntary with no dis- traint. . . . The above named taxpayer(s) respectfully disclaim any liability and de-

* The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

cline to volunteer concerning assessment and payment of any [tax]." JA 290. The disclaimer closed by suggesting that if the taxpayer "shows the tax to be zero," then the IRS has the obligation of assessing any tax deficiency. *Id.*

The IRS audited the Christians, who refused to cooperate, even after Agent Rogowski of the IRS's Criminal Investigation Division became involved. After a court enforced an administrative summons for their records, the Christians produced documentation regarding the real property sale and the trusts. The documents revealed that the Christians maintained control of the two trusts and, as a result, retained control over the transfer of their real property and the proceeds from the sale.

After meeting with Agent Rogowski and after receiving an accountant's advice that the proceeds of the sale belonged on their individual tax return, the Christians filed an amended 1995 return using an IRS Form 1040X on July 17, 1997. The return listed the tax due at approximately $1.1 million, stated that the "admitted tax liability is zero," then added a tax disclaimer nearly identical to the one attached to Cornerstone Management Trust's earlier return. JA 304.

On February 27, 2002, a grand jury indicted the Christians on a single count of willfully attempting to evade the payment of income tax due from the sale of their property "by filing ... a false and fraudulent joint U.S. Individual Income Tax Return, Form 1040" in violation of 26 U.S.C. § 7201. JA 29. The jury returned a guilty verdict against both defendants. The court sentenced them each to 27–month prison sentences.

## II.

■ The Christians initially argue that the proof introduced by the Government created a fatal variance with the facts al-leged in the indictment. The indictment, they note, alleged a single affirmative act of evasion (filing a false return) while the evidence introduced at trial proved several affirmative acts not alleged in the indictment (using sham trusts and moving money to offshore accounts). "A variance occurs when the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment," *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986) (quotation omitted), and it requires reversal only when it affects a defendant's substantial rights, *see United States v. Manning*, 142 F.3d 336, 339 (6th Cir.1998) ("A substantial right is affected when a defendant proves prejudice to his ability to defend himself or to the overall fairness of the trial.").

To prove tax evasion under 26 U.S.C. § 7201, the Government had to establish three elements: "[1] a tax deficiency, [2] willfulness and [3] an affirmative act to evade the tax." *United States v. Hook*, 781 F.2d 1166, 1171 n. 4 (6th Cir.1986). In addition to introducing evidence establishing a tax deficiency and the filing of a false tax return, the Government tried to show that the Christians acted willfully in evading their tax obligations by introducing evidence regarding the sham trusts and the overseas bank accounts. *See Cheek v. United States*, 498 U.S. 192, 201, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) (willfulness requires proof "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty"). While it is true that maneuvering property through sham trusts and transferring money offshore may constitute independent affirmative acts of evasion, that does not mean that these acts may not be used to establish circumstantial evidence of willfulness. *See United States v. Grumka*, 728 F.2d 794, 797 (6th Cir.1984) ("[I]t has

been held that a conviction may be sustained even when proof of *willfulness* is entirely circumstantial."). Far from engaging in a bait and switch over the terms of the indictment, the Government's evidence proved exactly what the indictment alleged—namely, that the Christians acted willfully in evading their taxes. *See United States v. McGill,* 964 F.2d 222, 237—38 (3d Cir.1992) ("Evidence of affirmative acts may be used to show willfulness.") (quotation omitted). Through the sham trusts and overseas bank accounts, in other words, the Government sought to show that the Christians knew what they were doing—which is to say, they acted willfully—when they chose not to pay taxes on the $2.9 million capital gain from the sale of their house. No variance occurs under these circumstances.

■ Furthermore, there has been no showing of prejudice to the defendants or to the overall fairness of the trial. The Christians allege that they did not "prepare to defend a charge of attempting to evade or defeat their income tax responsibility by the use of sham trusts, disclaimers of civil liability properly attached to their returns, or movement of their funds ... outside of the United States." Appellants' Reply Br. at 28—29. But all of the evidence regarding the trusts, the disclaimers and the movement of funds to the Cayman Islands was obviously known to the defendants and was not disputed by them. In short, this is not a case in which a defendant could legitimately claim surprise when confronted with evidence of which the defendant had no prior knowledge or could reasonably dispute with regard to its accuracy. The admission of the evidence in question did not prejudice the Christians' ability to defend themselves and did not affect the overall fairness of the trial.

## III.

■ The Christians next challenge the sufficiency of the evidence against them, arguing that the evidence establishes neither willfulness nor an affirmative act of evasion. We must affirm the convictions if "after viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, any rational trier of fact could find the elements of the crime beyond a reasonable doubt." *United States v. Villarce,* 323 F.3d 435, 438 (6th Cir.2003) (emphasis omitted).

The Government's evidence supports findings of willfulness and an affirmative act of evasion. *See United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976) (willfulness may be shown through "bad faith" or an "intentional violation of a known legal duty"); *see also Cheek,* 498 U.S. at 202, 111 S.Ct. 604 (willfulness may be negated by a good faith belief that one's actions do not violate the law); *Spies v. United States,* 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418 (1945) (An affirmative act of evasion "may be inferred from conduct such as ... concealment of assets or covering up sources of income ... and any conduct, the likely effect of which would be to mislead or to conceal."). Having filed tax returns in 1993 and 1994, having paid taxes in both years and having used an accountant in preparing both returns, the Christians revealed an understanding of their duty to pay taxes. *See United States v. Middleton,* 246 F.3d 825, 836 (6th Cir.2001) ("It is well-settled that previously filed tax returns or other proof of prior taxpayer history is admissible ... to establish a defendant's knowledge of a legal duty to pay taxes."). After selling the property, they created trusts for the sole purpose of attempting to disclaim any tax liability on

the sale. *See United States v. Noske,* 117 F.3d 1053, 1059 (8th Cir.1997) (selling "farm assets to [defendants'] corporation was a sham for tax purposes" and supported their tax-evasion convictions). They moved the money offshore, explaining only that they were trying to keep themselves from spending it—which did not happen since they later transferred $193,000 to themselves for personal use within seven months of selling their home. And, in contrast to previous years, they did not use their accountant in filing their 1995 returns. When the Christians were given an opportunity to correct their 1995 individual tax return, they again disclaimed liability. And when the Government made inquiries into their tax returns and the sale of real property, they refused to cooperate. All of this, viewed most favorably to the Government, supports the jury's findings of willfulness and an affirmative act of evasion.

Nor may the Christians sidestep this conclusion by pointing out that their 1995 individual tax return did not contain a false statement when read in conjunction with Cornerstone Management Trust's IRS Form 1041, which did disclose the tax owed and proceeded to disclaim any liability for it. The Government prosecuted the Christians for income tax evasion with respect to their individual tax return, not the return of Cornerstone Management Trust. And their individual return neither acknowledged nor paid the tax due. No doubt, a jury could have concluded that the acknowledgment of the sale and the tax due on the Cornerstone Management Trust form undermined a finding that the Christians acted willfully and committed an affirmative act of evasion. But in view of the Christians' prior tax-filing experiences, their sudden decision no longer to use an accountant, their creation of the sham trusts and offshore accounts and their non-cooperative conduct once the Government inquired about the sale, the

Christians cannot tenably argue that the jury was *compelled* to reach such a conclusion on the basis of the Cornerstone tax filing.

## IV.

### A.

■ The Christians next argue that the district court should have instructed the jury on the lesser-included offense of failing to provide information to the Government in violation of 26 U.S.C. § 7203. That section punishes "[a]ny person ... who [when required by law] willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time required by law or regulations." In *United States v. Colon,* 268 F.3d 367, 373 (6th Cir.2001), we held that a defendant is entitled to a lesser-included-offense instruction when: "(1) a proper request is made; (2) the elements of the lesser offense are identical to part of elements of the greater offense; (3) the evidence would support a conviction on the lesser offense; and (4) the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser." We review the district court's refusal to give the instruction for an abuse of discretion. *Id.*

The Christians, as noted, requested one lesser-included-offense instruction at trial—failure to supply information in violation of § 7203. The Government concedes that § 7203 may be a lesser-included offense of § 7201 and acknowledges that the affirmative act of evasion (required for § 7201) differentiates the two crimes. *See Spies,* 317 U.S. at 499, 63 S.Ct. 364 ("Congress intended some willful commission in addition to the willful omissions that make up the list of misdemeanors."). The Gov-

ernment also acknowledges that the evidence presented at trial would have supported a finding that the Christians failed to supply information—namely, they did not disclose the profit gained from the 1995 sale of their property.

The Christians' claim fails, however, because they cannot show that "the proof on the element ... differentiating the two crimes"—the affirmative act of evasion—"is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser." *Colon,* 268 F.3d at 373. As the Supreme Court observed in *Sansone v. United States,* 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965), a lesser-included-offense instruction is proper only "if on the facts of a given case, there are disputed issues of fact which would enable the jury rationally to find that, although the elements of § 7201 have not been proved, all the elements of one or more lesser offenses have been." *Id.* at 351, 85 S.Ct. 1004. That was not the case in *Sansone,* the Court held, because a jury could reach a guilty verdict on the misdemeanor (§ 7203) only by finding the same facts that would support a guilty verdict for the felony (§ 7201). *Id.* at 351—52, 85 S.Ct. 1004. To permit a lesser-included offense in this setting, the Court reasoned, "would only invite the jury to pick between the felony and the misdemeanor so as to determine the punishment to be imposed, a duty Congress has traditionally left to the judge." *Id.* at 350 n. 6, 85 S.Ct. 1004.

In this case, as in *Sansone,* the facts supporting the lesser-included charge "covered precisely the same ground" as the facts supporting the crime charged. *Id.* at 353, 85 S.Ct. 1004 (quotation omitted). For that reason, the jury's resolution of the element differentiating the greater and lesser offenses in this case—the affirmative act of filing a false and fraudulent income tax return—could not

consistently support a verdict for the lesser offense. *See Colon,* 268 F.3d at 373. The Government focused its case on the Christians' failure to supply information concerning the property sale. Appellee Br. at 23. That failure necessarily included the filing of the IRS Form 1040 for tax year 1995, which omitted any reference to their property sale. In this sense, if the jury found that the Christians failed to provide information when due under § 7203, they could do so only on the basis that the failure occurred when the Christians submitted their false IRS Form 1040 for tax year 1995, which was the affirmative act of evasion under § 7201 charged in the indictment. The facts presented at trial offered only one choice for the jury—either the Christians failed to supply information on their tax return or they did not. No other evidence introduced at trial would support a separate factual theory supporting a misdemeanor conviction. On this record, the district court did not abuse its discretion in refusing to give the instruction.

*Spies* does not alter this conclusion. In *Spies,* the Government premised its case on the defendant's failure to file a return or pay a tax. If the *Spies* jury ultimately concluded that the affirmative acts alleged by the Government were not "attempt[s] to evade or defeat the tax," then the evidence introduced at trial (*e.g.,* the defendant's failure to pay the tax or file a return) would consistently support a conviction on the lesser offense. Here, by contrast, the Christians' false tax return provided "the only basis for a possible conviction of the lesser included offense of failure [to supply information]." *United States v. DeTar,* 832 F.2d 1110, 1114 n. 4 (9th Cir.1987) (distinguishing *Sansone* and holding that a lesser-included-offense instruction was proper when evidence showed a willful failure to pay a tax, even

if other evidence did not prove an affirmative act of evasion).

### B.

■ The district court also did not err in rejecting the Christians' objection to Jury Instruction 19 on sham trusts. That instruction reads:

Under the law, tax consequences depend on the substance of a situation, not the form, and income is taxed to the person or entity that, in fact, earns it. Therefore, a transaction entered into for the principal purpose of evading taxes that lacks economic substance is disregarded by the law as a sham. A transfer is not recognized for tax purposes if the transfer has no economic substance.

In this case, the government contends that each defendant knowingly participated in conveyances of assets to various trusts. The government further contends that the trusts and the asset transfers lack economic substance. You should examine if there was a real or significant change in a defendant's relationship to property as a result of the creation of a trust. In determining whether a particular transaction or entity lacked economic substance, you are instructed to consider the overall circumstances surrounding that transaction. A trust arrangement is a sham for tax purposes if the trust originator retains control over the property or income placed in the trust and does not change the way the property or income is treated.

Tr. Vol. III at 131–32. We review jury instructions "as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision," and "reverse the district court only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *United States v. Stewart*, 306 F.3d 295, 306 (6th Cir.2002).

In this case, we have already determined that the Government permissibly argued that the Christians' use of sham trusts was a way of proving that they willfully evaded their tax obligations. And in another case, we have held that "[t]he Internal Revenue Code assesses taxes based on economic reality. In other words, the Code assesses taxes based on a transaction's true purpose, not its purely formal or ostensible purpose." *Estate of Kluener v. Comm'r*, 154 F.3d 630, 634 (6th Cir.1998) (citation omitted). Rather than mislead the jury, Jury Instruction 19 accurately informed the jurors that the economic substance of a transaction matters in tax cases and allowed them to conclude that the Christians established the trusts merely for the purpose of evading taxes.

While arguing that "the economic substance instruction about sham trusts was not an accurate statement of the law on trusts," Appellant Br. at 38, the Christians fail to explain why and above all fail to offer an alternative instruction that should have been given. At least one other circuit has approved the language used in Jury Instruction 19. *See Noske*, 117 F.3d at 1059 (district court correctly stated the law by instructing the jury "that trust arrangements are shams for tax purposes if the trust's originator retains control over the property or income placed in the trust, and does not change the way the property or income is treated"). The district court did not err in giving a similar instruction.

### C.

The Christians, lastly, argue that the district court violated Rule 30(d) of the Federal Rules of Criminal Procedure by not affording them an opportunity to object to the jury instructions after the district court read them to the jury but before releasing them for deliberation. *See* Fed.R.Crim.P. 30(d) ("An opportunity must be given to object out of the jury's

hearing and, on request, out of the jury's presence."). As the Christians acknowledge, however, their argument is not that they could not object, but that the district court did not invite them to "refine" their objections after instructing the jury but before the start of deliberation. Appellant Br. at 38—39. We need not address whether the district court violated Rule 30(d) in this setting because the Christians at all events have failed to offer any sustainable explanation why the district court's conduct negatively impacted the trial—or for that matter have even indicated what new points they would have raised had they been invited to "refine" their objections. *See Hamling v. United States,* 418 U.S. 87, 134—35, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

### IV.

For the foregoing reasons, we affirm.