

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-23-2006

# Marretta v. Commissioner IRS

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2679

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Marretta v. Commissioner IRS" (2006). *2006 Decisions.* Paper 1547.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1547

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No. 04-2679

JOHN MARRETTA,

Appellant

v.

COMMISSIONER OF INTERNAL REVENUE

On Appeal from the United States Tax Court
(Tax Court Docket No. 2289-03)
Tax Court Judge:   Arthur L. Nims, III

Argued:  January 25, 2006

Before:  RENDELL and STAPLETON, <u>Circuit</u> <u>Judges</u>,
and POLLAK*, <u>District</u> <u>Judge</u>

(Filed:  February 23, 2006)

_____

* Honorable Louis H. Pollak, Judge of the United States District Court for the
    Eastern District of Pennsylvania, sitting by designation.

Robert Kenny   [ARGUED]
Suite 206
212 Carnegie Center
Princeton, NJ   08540

   *Counsel for Appellant*
   *John Marretta*

David I. Pincus
Sara A. Ketchum   [ARGUED]
United States Department of Justice
Tax Division
P. O. Box 502
Washington, DC   20044

   *Counsel for Appellee*
   *Commissioner of Internal Revenue*

---

OPINION OF THE COURT

---

RENDELL, *Circuit Judge*.

The Commissioner of Internal Revenue assessed penalties against John Marretta

pursuant to section 6663 of the Internal Revenue Code ("I.R.C.") for his failure to report

income he received from a "Ponzi" scheme during 1992, 1993, and 1994.  The penalties

for these years amounted to $6,347, $22,350, and $28,454, respectively.  The Tax Court

upheld the Commissioner's determination, and Marretta appeals its Decision to us under

I.R.C. § 7482(a)(1).  We have plenary review over the Tax Court's findings of law,

including its construction and application of the Internal Revenue Code, and we review

the Tax Court's factual findings for clear error.  *PNC Bancorp, Inc. v. Comm'r*, 212 F.3d

2

822, 827 (3d Cir. 2000).

The parties have stipulated to the key facts of this case. Marretta's tax troubles stem from his investment in CNC Trading Company ("CNC"), which was owned and primarily operated by Charles N. Cugliari. Cugliari and CNC's salespeople sold investments in CNC "contracts" for approximately $25,000 and half shares at approximately $12,500. Investors were told that CNC used their money to purchase food products each month for resale to food wholesalers and supermarket chains. CNC sent fixed monthly distributions to its investors, who were told that the distributions constituted one half of the company's profits. Unless an investor specified otherwise, CNC would reinvest his or her principal investment and keep paying that investor monthly distributions. Investors could receive their principal investment back from CNC upon request.

CNC was a Ponzi scheme. Instead of purchasing food products with the money it received from investors, CNC used that money to pay out cash or checks on a monthly basis to prior investors. CNC did not report these payments to the IRS, nor did it provide investors with annual 1099 forms. The company closed in February 1995.

Between November 1991 and January 1995, Marretta invested $250,657 in eleven CNC contracts. During that time, he received monthly checks from the company totaling $280,932. Marretta did not report any of these distributions from CNC on his tax returns for 1992, 1993, or 1994.

Under I.R.C. § 6663, the IRS may seek a penalty for fraudulent underpayment of

3

taxes "equal to 75 percent of the portion of the underpayment which is attributable to fraud." The government bears the burden of proving by clear and convincing evidence that an underpayment is due to fraud. I.R.C. § 7454(a); *Mazzoni's Estate v. Comm'r*, 451 F.2d 197, 201 (3d Cir. 1971). To satisfy this burden, the government must show that (1) an underpayment exists, and (2) part of the underpayment was due to fraud. *Morse v. Comm'r*, 419 F.3d 829, 832 (8th Cir. 2005); *Sadler v. Comm'r*, 113 T.C. 99, 102 (1999). If the government "establishes that any portion of the underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment that the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud." I.R.C. § 6663(b).

We agree with the Tax Court that the Commissioner has demonstrated that Marretta failed to report gross income in 1992, 1993, and 1994, resulting in an underpayment for those years. The Internal Revenue Code broadly defines "gross income" as "all income from whatever source derived," including income derived from business, interest, and dividends. I.R.C. § 61. The Supreme Court gives "a liberal construction to this broad phraseology in recognition of the intention of Congress to tax all gains except those specifically exempted." *Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 430 (1955). It is undisputed that Marretta received $280,932 in checks from CNC that were monthly payments on the contracts he purchased. CNC represented that these payments were a return on Marretta's "investment." The monthly vouchers Marretta received with his checks showed the "realization" on his investment and his share of the

margin. Given the breadth of I.R.C. § 61, these distributions were undoubtedly gross income, unless they fell within an exception. *See Rickel v. Comm'r*, 900 F.2d 655, 657-58 (3d Cir. 1990) ("[A]ny accession to wealth is presumed to be gross income, unless the taxpayer can demonstrate that the accession fits into one of the specific exclusions created by other sections of the IRC.").

Marretta makes alternative arguments for why these distributions were not income. First, he claims that because CNC created no actual profits, it was impossible for Marretta to have received "profit income" through the Ponzi scheme, as he admitted at his 1999 plea hearing. This argument misses the point. The critical finding is not that Marretta received any particular type of income, but rather that he received unreported gross income from CNC, the nondisclosure of which resulted in an underpayment. Whether or not CNC generated profits is irrelevant to the question of whether the checks Marretta received constituted reportable income for his own tax purposes.

Marretta's second contention is that the distributions from CNC constituted return of capital. We disagree. The monthly vouchers CNC sent showed that the full amount of Marretta's original investment remained credited to his account *after* each distribution. Moreover, Marretta stipulated that he could have received his principal investment at any time simply by requesting it, which he never did. Thus, Marretta constructively received and reinvested his principal each month, *see* 26 C.F.R. § 1.451-2(a) (defining constructive receipt of income), and received a distribution check *in addition to* this investment. These distribution checks were "accessions to wealth" that constituted

5

income. *See Rickel*, 900 F.2d at 657.

We also agree with the Tax Court that the Commissioner carried the burden of proving that the underpayment was due to fraud. Fraudulent intent is rarely established by direct evidence. Rather, a court may infer it from various kinds of circumstantial evidence, such as understatement of income, inadequate records, failure to file tax returns, implausible or inconsistent explanations of behavior, concealing assets, and failure to cooperate with tax authorities. *Spies v. United States*, 317 U.S. 492, 499 (1943); *Mazzoni's Estate*, 451 F.2d at 202. The Tax Court's finding of fraud is a question of fact that will only be reversed if shown to be clearly erroneous. *Solomon v. Comm'r*, 732 F.2d 1459, 1461 (6th Cir. 1984); *Mazzoni's Estate*, 451 F.2d at 201.

We find no clear error in the Tax Court's conclusion that Marretta's underpayments were due to fraud. Marretta admitted at his 1999 plea hearing that he evaded taxes willfully and with the specific intent to violate a known legal duty in 1992, 1993, and 1994. The record also shows that Marretta never mentioned to his tax preparer that he was receiving monthly distributions from CNC, or even that he had invested in the company, supporting an inference that Marretta intended to conceal his true income.

Finally, we reject Marretta's claim that the Tax Court erred by excluding from the record a set of amended tax returns Marretta filed a week before his trial before the Tax Court. Introduction of these returns would have violated a standing order of the Tax Court requiring that evidence be submitted at least fourteen days prior to trial. It was not an abuse of discretion for the Court to enforce its order. In any event, we do not rely on

either the first or second set of amended returns Marretta filed in concluding that the Tax Court appropriately sustained the penalties assessed against Marretta under I.R.C. § 6663 for 1992, 1993, and 1994.

For the foregoing reasons, we will AFFIRM the Tax Court's Decision.

_____