T.C. Memo. 2008-220

UNITED STATES TAX COURT

JACK E. AND RUTH I. CHRISTIANS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21555-07.                      Filed September 29, 2008.

<u>Robert Alan Jones</u>, for petitioners.

<u>A. Gary Begun</u>, for respondent.

MEMORANDUM OPINION

JACOBS, <u>Judge</u>:[1]  This matter is before the Court on
respondent's motion for summary judgment filed pursuant to Rule
121.  Petitioners filed a response opposing respondent's motion.

_____

[1]This case was assigned to Judge Julian I. Jacobs for
disposition of respondent's motion for summary judgment by order
of the Chief Judge on Aug. 12, 2008.

The issues presented are:  (1) Whether petitioners, each of whom was indicted and subsequently convicted under section 7201 for

> willfully attempting to evade and defeat a large part of the income tax due * * * for the calendar year 1995, by filing and causing to be filed * * * a false and fraudulent joint U.S. Individual Income Tax Return, Form 1040, wherein approximately TWO MILLION NINE HUNDRED FORTY SIX THOUSAND FIFTY dollars ($2,946,050) of income was excluded from the return causing an underpayment of approximately EIGHT HUNDRED TWENTY FOUR THOUSAND EIGHT HUNDRED NINETY FOUR Dollars ($824,894)in taxes,

are collaterally estopped from contesting their liability for the civil fraud penalty under section 6663 for the same taxable year; and (2) whether petitioners are entitled to a $25,600 charitable contribution deduction for taxable year 1995.

All section references are to the Internal Revenue Code (Code) as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  The parties stipulated that any appeal in this case will lie to the Court of Appeals for the Sixth Circuit.

The Court of Appeals for the Sixth Circuit, in United States v. Christians, 105 Fed. Appx. 748 (6th Cir. 2004), affirmed petitioners' convictions under section 7201.  The Court of Appeals identified the relevant facts to be as follows.

In 1995, Meijer, Inc., a large retailer, entered into negotiations with the Christians [petitioners herein] for the purchase of their Michigan home and an accompanying 20-acre tract of land.  On the day before Meijer made its final offer of approximately $3.1 million, the Christians created Cornerstone Management Trust, naming themselves as trustees, and deeded their property to the trust for $10.  The Christians accepted Meijer's $3.1 million offer.

A few days before the closing on the land sale, the Christians created Ottawa Trust, again naming themselves as trustees.  After receiving a check written to the Cornerstone Management Trust for $3,072,699.94, the Christians deposited the funds in Ottawa Trust's account.  In the months following the sale, the Christians moved most of the money to Barclays Bank in the Cayman Islands, ultimately sending over $3 million there.

On April 15, 1996, the Christians filed their individual IRS Form 1040, which omitted any reference to the real-property sale or to the gain realized from it.[2]  The Christians also filed an IRS Form 1041 for Cornerstone Management Trust.  This return disclosed the property sale, calculated the tax due at over $1.1 million, and was signed by Jack Christians.  Instead of paying the tax, however, Jack Christians attached a disclaimer, which read in part: "The assessment and payment of income taxes is voluntary with no distraint. . . . The above named taxpayer(s) respectfully disclaim any liability and decline to volunteer concerning assessment and payment of any [tax]."  The disclaimer closed by suggesting that if the taxpayer "shows the tax to be zero," then the IRS has the obligation of assessing any tax deficiency.

The IRS audited the Christians, who refused to cooperate, even after Agent Rogowski of the IRS's Criminal Investigation Division became involved.  After a court enforced an administrative summons for their records, the Christians produced documentation regarding the real property sale and the trusts.  The documents revealed that the Christians maintained control of the two trusts and, as a result, retained control over the transfer of their real property and the proceeds from the sale.

After meeting with Agent Rogowski and after receiving an accountant's advice that the proceeds of the sale

---

[2]The return showed a total tax of $9,469.

belonged on their individual tax return, the Christians filed an amended 1995 return using an IRS Form 1040X on July 17, 1997. The return listed the tax due at approximately $1.1 million,[3] stated that the "admitted tax liability is zero," then added a tax disclaimer nearly identical to the one attached to Cornerstone Management Trust's earlier return.

On February 27, 2002, a grand jury indicted the Christians on a single count of willfully attempting to evade the payment of income tax due from the sale of their property "by filing ... a false and fraudulent joint U.S. Individual Income Tax Return, Form 1040" in violation of 26 U.S.C. §7201. The jury returned a guilty verdict against both defendants. The court sentenced them each to 27-month prison sentences. [Id. at 749-750; joint appendix refs. omitted.]

On their 1995 return petitioners claimed a $25,600 charitable contribution deduction consisting of $600 in cash and $25,000 of other property. Attached to the return was a Form 8283, Noncash Charitable Contributions, which described the donated property as a house in good condition with a fair market value of $25,000 and identified the donee as the Evangelistic Center of Grand Rapids, Michigan. A letter of thanks and a receipt for $25,000, both signed by Pastor Harry Dunn of the Evangelistic Center, were attached to the return. In their amended 1995 return, filed July 17, 1997, in addition to increasing the amount of their adjusted gross income to include the gain from the sale of property to Meijer, Inc., petitioners claimed an additional $120,025 charitable contribution deduction.

---

[3]The amended return increased petitioners' adjusted gross income by $2,948,000, with the explanation "Ottawa Revocable Living Trust Not Included in Original Filing of Form 1040", and showed $1,118,112 as the correct amount of total tax.

Respondent issued a notice of deficiency on June 29, 2007. Respondent determined that petitioners' income should be increased by $2,948,000 to reflect the sale of property to Meijer, Inc., and disallowed the $25,600 charitable contribution deduction claimed in the original return. The resulting tax, according to respondent, is $845,049, leaving a deficiency of $835,580 after taking into account the amount of tax ($9,469) shown on the original return. Respondent acknowledges that petitioners made a payment of $824,894 on January 24, 2003, which will be applied to the deficiency amount. Respondent also determined that petitioners are liable for the section 6663 civil fraud penalty in the amount of $626,685.

Petitioners admit that the gain from the sale of property to Meijer, Inc., is includable in their income for 1995 and generated tax. They assert, however, that their tax liability was not understated but rather was reported by means of two returns--a Form 1040, U.S. Individual Income Tax Return, and a Form 1041, U.S. Income Tax Return for Estates and Trusts, filed by Cornerstone Management Trust.

Petitioners concede in their response opposing respondent's motion that "the law is not generally in their favor", but they maintain "they should be allowed to contest the fraud penalty on the basis of the facts which establish that no fraudulent tax returns were filed but rather the Petitioners refused to pay the

original amounts due, and moved their assets out of the jurisdiction of the United States to frustrate collection efforts by the IRS."

In summarizing their position, petitioners state:

This is clearly a willful refusal to pay, tax protest type case not a fraudulent attempt to evade liability. Although convicted of violating IRC §7201, it is clear that Petitioners were engaged in conduct to attempt to validate their incorrect positions that no taxes were due and owing at that time.

This should not result in collateral preclusion by fraud. It was not necessary under §7201 for the jury to find a fraudulent filing to sustain or support the conviction. Therefore, the facts should be viewed as admitted by Respondent, thus precluding summary judgment on the issue.

Petitioners also assert that they are entitled to contest respondent's disallowance of their $25,600 claimed charitable contribution. Finally, petitioners claim that their $824,894 payment of January 24, 2003, extinguished their tax liability.

## Discussion

As a preliminary matter, we note that summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment where there is no genuine issue of any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of proving that no

genuine issue of material fact exists, and the Court will view any factual material and inferences in the light most favorable to the nonmoving party. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985). A partial summary adjudication may be made even if it does not dispose of all the issues in the case. Rule 121(b); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). Rule 121(d) provides that where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading," but must set forth specific facts, by affidavits or otherwise, "showing that there is a genuine issue for trial."

We now turn to the first of the two issues; namely, whether petitioners' convictions for income tax evasion under section 7201 collaterally estop them from litigating the issue of their liability for the civil fraud penalty under section 6663.

In Montana v. United States, 440 U.S. 147, 153-154 (1979), the Supreme Court provided guidance on the application of the doctrine of collateral estoppel as follows: "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."

The two Code sections involved herein are section 6663 and section 7201. Section 6663 provides:

SEC. 6663.   IMPOSITION OF FRAUD PENALTY.

(a)   Imposition of Penalty.--If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud.

(b)   Determination of Portion Attributable to Fraud.-- If the Secretary establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud.

(c) Special Rule for Joint Returns.--In the case of a joint return, this section shall not apply with respect to a spouse unless some part of the underpayment is due to the fraud of such spouse.

An "underpayment" for purposes of section 6663 is defined in section 6664(a), in relevant part, as the amount by which the tax imposed exceeds the amount shown as the tax by the taxpayer on his return.

The record shows, and petitioners admit, that they filed a 1995 individual tax return on which they did not report the gain from the sale of their property to Meijer, Inc., or the tax imposed on the gain.  However, petitioners assert that their tax liability was not understated but rather was reported by means of two returns--a Form 1040 and a Form 1041 filed by Cornerstone Management Trust.  Petitioners made this same assertion in appealing their convictions under section 7201.  The Court of Appeals for the Sixth Circuit rejected this argument, stating:

Nor may the Christians sidestep this conclusion [that they willfully evaded their taxes] by pointing out that their 1995 individual tax return did not contain a false statement when read in conjunction with Cornerstone Management Trust's IRS Form 1041, which did disclose the tax owed and proceeded to disclaim any liability for it. The Government prosecuted the Christians for income tax evasion with respect to their individual tax return, not the return of Cornerstone Management Trust. And their individual return neither acknowledged nor paid the tax due. No doubt, a jury could have concluded that the acknowledgment of the sale and the tax due on the Cornerstone Management Trust form undermined a finding that the Christians acted willfully and committed an affirmative act of evasion. But in view of the Christians' prior tax-filing experiences, their sudden decision no longer to use an accountant, their creation of the sham trusts and offshore accounts and their non-cooperative conduct once the Government inquired about the sale, the Christians cannot tenably argue that the jury was <u>compelled</u> to reach such a conclusion on the basis of the Cornerstone tax filing. [<u>United States v. Christians</u>, 105 Fed. Appx. at 752].

We are mindful that petitioners, in their amended return, admitted an underpayment of tax for 1995. See <u>Badaracco v. Commissioner</u>, 464 U.S. 386, 399 (1984).[4] Therefore, there is no doubt that there was an "underpayment of tax required to be shown on a return" with respect to petitioners' 1995 return as required by section 6663.

---

[4]Petitioners do not appear to argue that their amended return, filed after they were notified that the IRS's Criminal Investigation Division had become involved, remedied the fraudulent underpayment with respect to their original return. Indeed, as the Supreme Court noted in <u>Badaracco v. Commissioner</u>, 464 U.S. 386, 394 (1984), "once a fraudulent return has been filed, the case remains one 'of a false or fraudulent return,' regardless of the taxpayer's later revised conduct, for purposes of criminal prosecution and civil fraud liability" and "a taxpayer who submits a fraudulent return does not purge the fraud by subsequent voluntary disclosure".

Section 7201 provides:

SEC. 7201.  ATTEMPT TO EVADE OR DEFEAT TAX.

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

Petitioners were convicted of violating section 7201.  We have repeatedly held that "A conviction for an attempt to evade or defeat tax pursuant to section 7201, either upon a guilty plea or upon a jury verdict, conclusively establishes fraud in a subsequent civil tax fraud proceeding through the application of the doctrine of collateral estoppel."  Marretta v. Commissioner, T.C. Memo. 2004-128 (citing DiLeo v. Commissioner, 96 T.C. 858, 885 (1991), affd. 959 F.2d 16 (2d Cir. 1992) and Frey v. Commissioner, T.C. Memo. 1998-226), affd. 168 Fed. Appx. 528 (3d Cir. 2006); see also Montalbano v. Commissioner, T.C. Memo. 2007-349 ("It is well established that a final criminal judgment for tax evasion under section 7201 collaterally estops relitigation of the issue of fraudulent intent in a subsequent proceeding over the civil fraud penalty."); Uscinski v. Commissioner, T.C. Memo. 2006-200 ("Because the elements of criminal tax evasion and civil tax fraud are identical, petitioner's prior conviction under section 7201 conclusively establishes the elements necessary for finding fraud under section 6663."); Wilson v. Commissioner, T.C.

Memo. 2002-234 ("We hold that the doctrine of collateral estoppel bars * * * [the taxpayer convicted under section 7201] from relitigating in the instant case the matters litigated in * * * [the taxpayer's] criminal tax proceeding, i.e., whether * * * [the taxpayer] underpaid his tax for each of the taxable years * * * and whether his underpayment of such tax for each such year was due to fraud."). Our holding in this regard has been affirmed by the Court of Appeals for the Sixth Circuit. Shah v. Commissioner, 208 F.3d 215 (6th Cir. 2000), affg. without published opinion T.C. Memo. 1999-71; Gray v. Commissioner, 708 F.2d 243, 246 (6th Cir. 1983), and cases cited thereat, affg. T.C. Memo. 1981-1.[5]

As recounted supra, petitioners were indicted and convicted for willfully attempting to evade the payment of income tax due

---

[5]Petitioners, in their opposition to respondent's motion for summary judgment, rely on the dissenting opinion in Gray v. Commissioner, 708 F.2d 243, 247 (6th Cir. 1983) Merritt, J., dissenting, affg. T.C. Memo. 1981-1. The taxpayer in Gray, who entered a guilty plea to income tax evasion under sec. 7201, claimed that he did not understand that his guilty plea would have collateral consequences in subsequent civil proceedings. The dissent objected to application of collateral estoppel under those circumstances. Even were we to recognize a difference between a guilty plea and a jury verdict for purposes of application of collateral estoppel in these circumstances, which we do not, see Marretta v. Commissioner, T.C. Memo. 2004-128, affd. 168 Fed. Appx. 528 (3d Cir. 2006), petitioners' convictions were the result of a jury verdict of income tax evasion under sec. 7201 rather than the result of guilty pleas to those charges. In any event, apart from our own precedent, we would be constrained by the majority position in Gray v. Commissioner, supra, to apply the doctrine of collateral estoppel to the case at bar. See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

from the sale of their property by filing a false and fraudulent joint tax return for 1995 in violation of section 7201. As the Court of Appeals noted, the petitioners' filing of a false Form 1040 constituted the affirmative act of evasion under section 7201 charged in the indictment. United States v. Christians, 105 Fed. Appx. at 753. Therefore, contrary to petitioners' claim, the issue of whether they filed a false and fraudulent return for 1995 was in fact "actually and necessarily determined by a court of competent jurisdiction", Montana v. United States, 440 U.S. at 153. Thus, petitioners are estopped from relitigating that issue in this proceeding.

On the record presented, we find that there is no genuine issue of material fact with respect to the section 6663 penalty insofar as it relates to petitioners' 1995 underpayment attributable to petitioners' failure to report the gain from the sale of their property to Meijer, Inc., in their 1995 return. We thus hold that a decision may, and should, be entered against petitioners on that issue as a matter of law. Accordingly, we sustain respondent's determination to impose a penalty under section 6663 with respect to the portion of petitioners' 1995 underpayment attributable to the omitted gain from the sale.

We now turn to that portion of petitioners' 1995 underpayment which is attributable to petitioners' $25,600 claimed charitable contribution deduction. Petitioners'

entitlement to the charitable contribution deduction was not addressed in the criminal proceeding which resulted in their convictions under section 7201, and petitioners dispute respondent's disallowance of the charitable contribution deduction.  Summary judgment with respect to this matter is not appropriate.  A trial with respect to this issue should proceed.

A determination of the extent to which petitioners have paid their outstanding tax liability must await the resolution of the issue relating to the claimed charitable contribution deduction.

To reflect the foregoing,

<u>An order granting in part</u>
<u>and denying in part</u>
<u>respondent's motion for</u>
<u>summary judgment will be</u>
<u>issued</u>.