T.C. Memo. 2009-44

UNITED STATES TAX COURT

WALTER C. ANDERSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20364-07.                    Filed February 24, 2009.

        P filed timely tax returns for 1995 through 1999.
He was later charged with tax evasion under I.R.C. sec.
7201 for all five years.  By agreement P pleaded guilty
as to 1998 and 1999, and the charges for 1995 to 1997
were dismissed.  By a notice of deficiency issued in
July 2007, R determined deficiencies and fraud
penalties for all five years.  R sought from the
District Court the information previously submitted to
the grand jury, by a motion in which R argued that the
information was "needed" to sustain the deficiency
determinations.  P filed a petition in this Court in
which he asserted that the facts in all five years were
the same, and that he was innocent of fraud in all five
years.  P moved for summary judgment, arguing that the
deficiency determinations were invalid since R lacked
the information "needed" to sustain them.  R cross-
moved for partial summary judgment on the issue of P's
fraud for all five years.

        <u>Held</u>:  R's notice of deficiency was valid,
notwithstanding R's lack of the grand jury information.

Held, further, P's conviction for tax evasion under I.R.C. sec. 7201 for 1998 and 1999 collaterally estops him from denying civil fraud for those years for purposes of the statute of limitations, see I.R.C. sec. 6501(c)(1), and the fraud penalty, see I.R.C. sec. 6663(a).

Held, further, notwithstanding P's assertion that the facts for all five years at issue were the same, P's conviction of tax evasion for 1998 and 1999 does not collaterally estop him from denying civil fraud for the prior years 1995 through 1997.

Walter C. Anderson, pro se.

John C. McDougal, for respondent.

MEMORANDUM OPINION

GUSTAFSON, Judge: Petitioner Walter C. Anderson was charged with tax crimes for each of the five years 1995 through 1999. He pleaded guilty and was convicted for only the last two of the years, 1998 and 1999, and by agreement the charges as to the prior three years were dismissed. The Internal Revenue Service (IRS), issued to Mr. Anderson a statutory notice of deficiency pursuant to section 6212,[1] showing the IRS's determination of the

---

[1]Unless otherwise indicated, all citations to sections refer to the Internal Revenue Code of 1986 (26 U.S.C.), as amended, and all citations to Rules refer to the Tax Court Rules of Practice and Procedure.

following deficiencies in income tax[2] and accompanying fraud penalties under section 6663 for all five years:

| Tax Year | Deficiency | Sec. 6663 Penalty |
|----------|-----------|-------------------|
| 1995 | $ 386,344 | $ 289,758.00 |
| 1996 | 2,012,045 | 1,509,033.75 |
| 1997 | 36,490,421 | 27,367,815.75 |
| 1998 | 50,022,418 | 37,516,813.50 |
| 1999 | 94,868,390 | 70,993,002.00 |

Mr. Anderson petitioned this Court, pursuant to section 6213(a), to redetermine those deficiencies. The case is now before the Court on petitioner's and respondent's cross-motions for summary judgment pursuant to Rule 121. The issues for decision are (1) whether Mr. Anderson is entitled to summary judgment on all disputed issues because (he contends) sufficient evidence is lacking to support respondent's notice of deficiency and pleadings; and (2) whether instead respondent is entitled to partial summary judgment[3] because Mr. Anderson's

---

[2]As is set out more fully below, over 99 percent of these deficiencies are attributable to the income of Gold & Appel Transfer, S.A. (Gold & Appel), a British Virgin Islands corporation, which Mr. Anderson controlled for purposes of Federal securities law. Respondent alleges that Gold & Appel is a "controlled foreign corporation" within the meaning of section 957, and that Mr. Anderson must therefore recognize a pro rata share of Gold & Appel's so-called subpart F income pursuant to section 951.

[3]Respondent seeks summary judgment for all five of the tax years at issue (i.e., both the years for which he pleaded guilty and the three prior years for which the charges were dismissed),
(continued...)

guilty plea to criminal tax evasion under section 7201 with respect to tax years 1998 and 1999 collaterally estops him from contesting that he fraudulently underpaid his income taxes in all five of the tax years at issue.  Mr. Anderson's motion will be denied, and respondent's motion will be granted as to 1998 and 1999, but not as to 1995 through 1997.

## Background

The following facts are not in dispute and are derived from the pleadings and the parties' motion papers, the supporting exhibits attached thereto, and the opinions in United States v. Anderson, 491 F. Supp. 2d 1 (D.D.C. 2007), affd. in part and revd. in part 545 F.3d 1072 (D.C. Cir. 2008).

Mr. Anderson's business activity

During the tax years at issue, Mr. Anderson was a telecommunications entrepreneur and venture capitalist who was actively involved in the operation of several international companies.  Two of these companies are central to the dispute between the IRS and Mr. Anderson: (i) Gold & Appel, which was formed in 1992 as a British Virgin Islands corporation by Icomnet S.A. (Icomnet), another British Virgin Islands corporation that was subject to Mr. Anderson's control; and (ii) Iceberg

_____

[3](...continued)
but only as to the issue of whether Mr. Anderson fraudulently underpaid his income taxes, not as to the actual amounts of tax deficiency and fraud penalty.

Transport, S.A. (Iceberg Transport), which was formed in 1993 as a Panama corporation by Mr. Anderson under the alias of "Mark Roth".  In 1993 Icomnet held 100 percent of the outstanding shares of Gold & Appel, and Mr. Anderson held 100 percent of the outstanding shares of Iceberg Transport.  Later in 1993, Mr. Anderson caused Icomnet to transfer all of its shares of Gold & Appel to Iceberg Transport.[4]  Afterwards, from 1995 through 1999, Gold & Appel generated hundreds of millions of dollars in income.

Aside from the above, many facts with respect to the ownership of Gold & Appel and Iceberg Transport are disputed.  Mr. Anderson alleges that he formed the Smaller World Trust in 1993 as a British Virgin Islands trust--the assets of which were subject to his management control--and simultaneously transferred all of his shares of Iceberg Transport, then the parent corporation of Gold & Appel, to the Smaller World Trust.  Though Mr. Anderson acknowledges that he continued to control Gold &

---

[4]Respondent's answer states that Mr. Anderson caused Icomnet to transfer its shares of Gold & Appel to Iceberg Transport in 1993.  In his petition Mr. Anderson refers to Iceberg Transport as Gold & Appel's "parent corporation", and in his memorandum in support of his motion for summary judgment, Mr. Anderson states that he ceased to be the owner of Gold & Appel in 1993.  However, in his pleadings Mr. Anderson repeatedly states that he caused the shares of Gold & Appel to be transferred to the Smaller World Trust.  We do not find this claim to be inconsistent with respondent's claim that the shares were transferred to Iceberg Transport, because Mr. Anderson alleges that Iceberg Transport was also an asset of the Smaller World Trust, and under that assumption, a transfer to Iceberg Transport would be tantamount to a transfer to the Smaller World Trust.

Appel for purposes of Federal securities law via his management control of the Smaller World Trust, he maintains that he ceased to be the true beneficial owner of Gold & Appel for Federal tax purposes after the alleged transfer to the Smaller World Trust. Instead, Mr. Anderson alleges that the Smaller World Trust was the true beneficial owner of Gold & Appel for the tax years at issue. Mr. Anderson further alleges that the Smaller World Trust (i) was a valid irrevocable trust, the ownership or income of which is not attributable to him pursuant to sections 671 to 679, and (ii) was a valid charitable trust, which had no income tax liability.

In contrast, respondent (i) disputes the existence of the Smaller World Trust,[5] (ii) alleges that Mr. Anderson was the true beneficial owner of Gold & Appel because he retained an option to purchase 99 percent of Gold & Appel's equity for nominal consideration; and (iii) alleges that Mr. Anderson was the true beneficial owner of Iceberg Transport because he retained 100

---

[5]In Mr. Anderson's criminal case, the prosecution disputed the existence of the Smaller World Trust. Respondent's answer admitted that Mr. Anderson formed the Smaller World Trust in 1993, and Mr. Anderson subsequently cited this admission as evidence that the facts before this Court are materially different from the facts in his criminal case and, therefore, collateral estoppel should not apply. In response, respondent moved for leave to amend the answer to deny the existence of the Smaller World Trust, stating that the prior admission was in error because the prosecution in Mr. Anderson's criminal case had evidence that the formation documents of the Smaller World Trust were backdated. We granted respondent's motion for leave to file amendment to answer by our order dated October 9, 2008.

percent of the outstanding shares of Iceberg Transport in the form of so-called bearer shares (i.e., an unregistered form of stock certificates that do not identify the owner but confer ownership on whoever possesses them) that were sent to a private mailbox of Mr. Anderson's in the Netherlands.  Respondent further alleges that Mr. Anderson's creation of Gold & Appel and Iceberg Transport in the British Virgin Islands and Panama, which are tax haven jurisdictions with financial secrecy laws and practices, and his use of bearer shares, aliases, and private mailboxes, among other things, were fraudulent acts that were performed with the intent to evade tax.

The examination and indictment

For each of the five years 1995 through 1999, Mr. Anderson filed income tax returns.  He filed the return for each year in the succeeding year, and he filed the latest of them (for 1999) in October 2000.[6]

The IRS conducted an investigation of Mr. Anderson, Gold & Appel, and related entities.  The IRS's investigation culminated in Mr. Anderson's being indicted in February 2005 for one count of corruptly obstructing, impeding, and impairing the due administration of the internal revenue laws under section 7212(a), five counts of criminal tax evasion with respect to tax

---

[6]Mr. Anderson filed his return for 1995 on April 15, 1996; for 1996 on June 21, 1997; for 1997 on August 31, 1998; for 1998 on September 30, 1999; and for 1999 on October 19, 2000.

years 1995 through 1999 under section 7201, and six counts of fraud in the first degree in violation of D.C. Code sec. 22-3221(a) (2001). The record before us does not include a complete copy of the indictment[7] but includes only the text of the following two counts in a superseding indictment filed in September 2005 (as to which two counts, as we explain below, Mr. Anderson later pleaded guilty):

**COUNT FIVE**

**Tax Evasion 1998**

42. Paragraphs 1 through 18, 21 through 31, 33, 35, and 36 of this Indictment are hereby realleged and incorporated as if fully set forth herein.[8]

43. From on or about January 1, 1998, through on or about September 30, 1999, in the District of Columbia and elsewhere, ANDERSON did willfully attempt to evade and defeat a large part of the income tax due and owing by him to the United States for the tax year 1998 by various means, including but not limited to the following:

   a) filing and causing to be filed a false and fraudulent 1998 United States Individual Income Tax Return, wherein he falsely stated that his total income was $67,939 and that the total tax due and owing thereon was $494,

---

[7]Our record does include the prosecutor's reading or paraphrasing of the indictment at the sentencing hearing. See infra p. 13.

[8]Presumably, the paragraphs incorporated by reference into Counts Five and Six include facts about Mr. Anderson's ownership and control of Gold & Appel and the related entities, but those paragraphs are not in the record now before us. The record does include the transcript of the hearing of September 8, 2006 (when Mr. Anderson entered his guilty plea), at which (at 18-27) the prosecutor read from or paraphrased portions of the indictment.

whereas, as he then and there well knew and believed, his total income was substantially greater than what he reported and a substantial additional tax was due and owing to the United States. Specifically, he failed to report the following additional items of income in the following approximate amounts:

 (i) $126,303,951 Subpart F investment-type income from G&A [Gold & Appel]; and

 (ii) $24,760 interest income from Barclays Bank.

b) failing to notify the IRS, as required by law, on a Schedule B of the 1998 United States Individual Income Tax Return of his signature authority and control of the G&A, ANDERSON 1 and ANDERSON 2 accounts at Barclays Bank;

c) failing to file the required Form TD-F, The Report of Foreign Bank and Financial Account, with the Department of the Treasury to report his control of G&A, ANDERSON 1 and ANDERSON 2 accounts at Barclays Bank;

d) operating his business affairs in a manner designed to conceal his ownership and control of G&A and Iceberg during tax year 1998, through various means, including but not limited to the following:

 (i) directing nominees to create and sign documents of G&A and Iceberg;

 (ii) engaging corporate service centers to receive mail addressed to G&A and Iceberg; and

 (iii) making or causing to be made false and fraudulent statements regarding the ownership and control of G&A and Iceberg;

In violation of Title 26, United States Code, Section 7201.

**COUNT SIX**

**Tax Evasion 1999**

44. Paragraphs 1 through 18, 21 through 31, and 33 through 36 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

45. From on or about January 1, 1999, through on or about October 19, 2000, in the District of Columbia and elsewhere, ANDERSON did willfully attempt to evade and defeat a large part of the income tax due and owing by him to the United States for the tax year 1999 by various means, including but not limited to the following:

   a)  filing and causing to be filed a false and fraudulent 1999 United States Individual Income Tax Return, wherein he falsely stated that his total income was $3,324,179, and that the total tax due and owing thereon was $458,370, whereas, as he then well knew and believed, his total income was substantially greater than what he reported and a substantial additional tax was due and owing to the United States.  Specifically, he failed to report the following additional items of income in the following approximate amounts:

      (i)  $238,561,316 Subpart F investment-type income from G&A;

      (ii) $400,629 income from Esprit;

      (iii) $16,822 interest income from Barclays Bank; and

      (iv) $133,348 capital gain income;

   b)  failing to notify the IRS, as required by law, on a Schedule B of the 1999 United States Individual Income Tax Return of his signature authority and control of the G&A, ANDERSON 1 and ANDERSON 2 accounts at Barclays Bank;

c) failing to file the required Form TD-F, The Report of Foreign Bank and Financial Account, with the Department of the Treasury to report his control of G&A, ANDERSON 1 and ANDERSON 2 accounts at Barclays Bank;

d) operating his business affairs in a manner designed to conceal his ownership and control of G&A and Iceberg during tax year 1999, through various means, including but not limited to the following:

(i) directing nominees to create and sign documents of G&A and Iceberg;

(ii) engaging corporate service centers to receive mail addressed to G&A and Iceberg; and

(iii) making or causing to be made false and fraudulent statements regarding the ownership and control of G&A and Iceberg;

In violation of Title 26, United States Code, Section 7201.

## Mr. Anderson's confinement

Mr. Anderson was incarcerated for the entire pendency of his criminal case. He was originally confined in a "more modern facility" (not specified in our record). However, he was transferred to the District of Columbia jail after the first facility determined that he was unmanageable because he had violated facility rules. Among other violations, he possessed a cell phone. Mr. Anderson alleges--and both respondent and the trial judge in his criminal case agree--that the conditions in the D.C. jail are very poor. At his later sentencing hearing, the judge called those conditions "scandalous".

Mr. Anderson's September 2006 guilty plea and conviction

Mr. Anderson's prosecution ended with a conviction, based on his guilty plea, entered on September 8, 2006, to the two counts (quoted above) alleging criminal tax evasion under section 7201 with respect to tax years 1998 and 1999.  Mr. Anderson also pleaded guilty to one count of fraud in the first degree under D.C. Code sec. 22-3221(a), and the remaining charges in the superseding indictment were dismissed.  Under the guilty plea, Mr. Anderson and the Government agreed (i) on a maximum term of imprisonment of ten years; (ii) that the District Court is obligated to calculate and consider, but is not bound by, the 2001 United States Sentencing Guidelines (2001 Guidelines); (iii) that the Federal tax loss exceeded $100 million for the purpose of calculating a sentence under the 2001 Guidelines; and (iv) that the court may order restitution pursuant to 18 U.S.C. sec. 3572 and D.C. Code sec. 16-711 (2001).  United States v. Anderson, 545 F.3d 1072 (D.C. Cir. 2008).

In the course of taking Mr. Anderson's guilty plea, the District Court judge asked him a series of questions to ensure that Mr. Anderson understood the effect of his plea.  The exchange included the following:

> THE COURT:    Do you understand that in order for me to accept the plea, you're going to have to acknowledge your guilt and acknowledge that you've engaged in certain conduct that makes up the elements of each of the offenses to which you're pleading guilty?

THE DEFENDANT: Yes.

The judge summarized the three counts to which Mr. Anderson was pleading guilty (including Counts Five and Six), and then asked--

THE COURT:   * * *  Do you understand those three specific charges, Mr. Anderson?

THE DEFENDANT: I do.

THE COURT:   And you've discussed them and the plea to each of those charges in-depth with your lawyers?

THE DEFENDANT: Yes.  However, <u>we don't agree with all of the allegations</u> of the government, but I am agreeing to plead guilty to those charges.  [Emphasis added.]

 *      *      *      *      *      *      *

THE COURT:   I need to ask you, has anyone threatened you or anyone close to you, or forced you in any way to decide to enter this plea of guilty?

(Ms. Peterson [defense counsel] conferred with the defendant)

THE DEFENDANT: No, no one has.

The prosecutor read or paraphrased a substantial portion of the indictment (covering ten pages of the hearing transcript), and asserted facts about Mr. Anderson's dealings not just in 1998 and 1999 but beginning as early as 1992.  The prosecutor's recitation included the following assertion:

Between 1995 and 1999 Mr. Anderson used the assets of Gold and Appel and Iceberg, which included the profits realized from these three telecommunication corporations, to invest in other business ventures.

Mr. Anderson successfully generated more than $450 million in earnings for Gold and Appel and Iceberg

during this period.  Mr. Anderson did not report these earnings as required by law on his United States and District of Columbia income tax returns for 1995 through 1999.

As a result, Mr. Anderson evaded more than $200 million in Federal and District of Columbia income tax returns.

The prosecutor then read particular assertions as to 1998 and

1999.  Defense counsel then made a statement that included the

following:

MS. PETERSON:  Your Honor, Mr. Anderson does not concede that every fact contained within the indictment is accurate * * *.

However, <u>he admits that over the years he retained control over the assets, and was required under U.S. law to pay taxes on the gains</u> from those assets. [Emphasis added.]

Counsel made further specific admissions as to 1998 and 1999 and

then stated:

Mr. Anderson further concedes that for purposes of computing his sentencing guideline range, the government could prove that the total tax loss was in excess of $100 million.

The Court then addressed Mr. Anderson directly:

THE COURT:     All right.  Mr. Anderson, you've heard what the government said, and you've heard what Ms. Peterson said about what you acknowledge and admit and concede.  Do you agree with everything that Ms. Peterson said?

THE DEFENDANT: Yes, I do agree with Ms. Peterson's statement.

    *         *         *         *         *         *         *

THE COURT: * * * Are you pleading guilty to these three offenses voluntarily and because you are guilty of each of them?

THE DEFENDANT: Yes.

\* \* \* \* \* \* \*

THE COURT: * * * I find that your plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the three offenses * * *. I will accept your plea of guilty to these three counts, and enter a judgment of guilty on those pleas.

Defense counsel then asked that Mr. Anderson be released pending sentencing. In the course of her argument--again, made in this same hearing, immediately after the court had accepted Mr. Anderson's guilty plea--his counsel asserted that the conditions of his confinement had been "deplorable", that the indoor temperature of the un-air-conditioned facility approached 120 degrees, and that he had "served a number of months in solitary confinement", had been "denied access to his attorneys a great deal of the time", and had been "denied medical care". The prosecutor opposed the request for release pending sentencing, and her comments included the following:

As Your Honor remembers, Mr. Anderson has not been a model prisoner. Some of the reasons why his experiences have been the way they have been was his own making. Mr. Anderson was placed in a different facility, not the D.C. Jail, by request of the Court, and he chose to violate not only their rules, he chose to violate the law. As the Court recognized and the Court heard the fact that contraband had been brought into CTF for Mr. Anderson, which included a cell phone that had Internet service, long distance, overseas capacity, the Court said I've had people in front of me

in this courtroom who were found guilty of offenses
like that, that was a crime. So I understand that he
has not had an easy time in the D.C. Jail, but that is
because of what he did.

The District Court denied the request for release and scheduled the sentencing hearing. At the September 2006 hearing at which Mr. Anderson pleaded guilty, neither Mr. Anderson, nor his counsel, nor the judge made any suggestion that the conditions of his confinement affected the voluntary nature of his plea.

The March 2007 sentencing hearing

Mr. Anderson's sentencing hearing took place over several days in March 2007. At that hearing,

The government presented evidence by three expert
witnesses concerning the amount of income received by
Mr. Anderson during 1998 (Count 5) and 1999 (Count 6),
and the calculation of taxes not paid to the United
States and the District of Columbia governments. The
government's experts testified that in 1998 and 1999
Mr. Anderson failed to report $365,484,654 in income on
his federal and D.C. tax returns. According to those
experts, the total amount of unpaid federal taxes for
1998 and 1999 was $140,587,613. The government's
experts further testified that Mr. Anderson defrauded
the D.C. government of taxes during 1999 (Count 11) in
the amount of $22,809,032. * * *

United States v. Anderson, 491 F. Supp. 2d at 2-3. At the hearing the Government put into evidence a 270-page summary of the computation of corrected taxable income.[9]

---

[9]The record here does not include that 270-page summary. However, respondent's opposition to Mr. Anderson's motion alleged its existence, and in his reply he did not dispute its existence.

It appears that, at the sentencing hearing, Mr. Anderson argued that the length of his sentence should take into account the poor conditions of the D.C. jail in which he had been confined.  On the subject of his having been moved to the D.C. jail, the judge observed:

> The truth is that Judge Kay and I evaluated the evidence that was presented to us and we made judgments that led to that, to his being there, and I think that it was the right judgment at the time, even though I don't like sending anybody to the DC jail.  His own conduct led to part of his trauma there and part of his being in isolation, but not all of it.  So I factor that into my sentence * * *.

Sentence was orally announced on March 27, 2007, and a written judgment reflecting the oral announcement was filed June 15, 2007.  Mr. Anderson was sentenced to nine years' imprisonment for criminal tax evasion with respect to tax years 1998 and 1999.  The District Court also imposed a concurrent sentence of four years' imprisonment on the fraud count.

The parties' appeals

Both parties appealed aspects of the sentence, but Mr. Anderson did not appeal the conviction itself.[10]  Mr. Anderson

---

[10]Mr. Anderson appealed on two grounds: (1) That the District Court violated the Ex Post Facto Clause of Article I, Section 9 of the United States Constitution by using the 2001 Guidelines, which were not in effect at the time that he pleaded guilty, and (2) that the sentence of 108 months' imprisonment is unreasonable.  The Government cross-appealed the District Court's denial of restitution.  In United States v. Anderson, 545 F.3d 1072 (D.C. Cir. 2008), the Court of Appeals for the D.C. Circuit rejected Mr. Anderson's arguments and affirmed his sentence of

(continued...)

has taken no action to withdraw his guilty plea or to challenge the conviction based on the plea.  Instead, Mr. Anderson has stated only that he intends, at some point in the future, to challenge his sentence by filing a so-called 2255 motion (i.e., a motion that is made pursuant to 28 U.S.C. sec. 2255 (2006) to vacate, set aside, or correct a sentence).

The IRS's notice of deficiency

On July 17, 2007, the IRS issued a notice of deficiency to Mr. Anderson for the years 1995 through 1999, more than six and a half years after he had filed the latest of his returns for those years.  The adjustments in the notice of deficiency were derived from the amounts given in the superseding indictment in the criminal case.[11]  The computations in the notice of deficiency also reflect additional adjustments for itemized or standard deductions and for personal exemptions for each year.

---

[10](...continued) imprisonment but reversed the District Court's denial of restitution.  The Court of Appeals remanded the case to the District Court to determine the amount of restitution that was agreed to under the plea agreement.

[11]In his memorandum in support of his motion for summary judgment Mr. Anderson states that the notice of deficiency contained calculations which were "copied exactly" from the filings that were made by the prosecution in relation to his criminal case.  The record here includes the text of the superseding indictment for two of the years--1998 and 1999--and the amounts for those years in the indictment and in the notice of deficiency do correspond.

At the time the IRS issued the notice of deficiency, the agency had access to the superseding indictment, the admission in Mr. Anderson's plea agreement that the tax loss in the criminal matter exceeded $100 million, and the 270-page summary of the computation of corrected taxable income that had been introduced in evidence at the sentencing hearing in Mr. Anderson's criminal case. However, the IRS did not have access to the supporting evidence that was presented to the grand jury, because such evidence is part of the record of the criminal case that is sealed pursuant to rule 6 of the Federal Rules of Criminal Procedure.

## The parties' pleadings in this case

Mr. Anderson filed his petition in this case on September 7, 2007, at which time he resided in New Jersey. The petition alleges:

> Due to the conditions in which he was held and <u>threats
> to his witnesses</u>,[12] petitioner was compelled to accept
> a plea agreement. * * * Petitioner and his legal
> counsel, on the record a[t] the plea hearing, made

---

[12]As to the petition's allegations of threats to witnesses, compare Mr. Anderson's colloquy with the judge at the plea hearing (quoted above):

> THE COURT: I need to ask you, has anyone
> threatened you or anyone close to you, or forced you in
> any way to decide to enter this plea of guilty?

> (Ms. Peterson [defense counsel] conferred with the
> defendant)

> THE DEFENDANT: No, no one has.

> clear that petitioner did <u>not agree</u> with <u>most of the</u>
> <u>claims and allegations</u> made against him.  He absolutely
> did not agree that he ever received any income or <u>had</u>
> <u>any onwership [sic] interest</u> [13] in Gold & Appel
> Transfer S.A. [Emphasis added.]

The petition denies that any fraud was committed, and it thereby

implicitly asserts both that Mr. Anderson does not owe fraud

penalties and that the assessment of any tax deficiency is barred

by the statute of limitations.[14]

Respondent prepared the answer (filed November 7, 2007) on

the basis of facts the IRS had developed prior to the criminal

referral and documents available in the public record of the

criminal case, including the superseding indictment, the summary

computation of corrected taxable income, motion papers, and

transcripts of various hearings.

In his reply filed November 27, 2007, Mr. Anderson stated

that he is innocent of tax fraud with respect to tax years 1998

and 1999 because he is innocent of tax fraud with respect to the

---

[13]This allegation of the petition seems to be at odds with
the comments actually made by Mr. Anderson's counsel at the plea
hearing (quoted above), and explicitly agreed to by him, that
"Mr. Anderson does <u>not concede</u> that <u>every fact</u> contained within
the indictment is accurate * * *.  However, he admits that over
the years he <u>retained control over the assets</u>".  (Emphasis
added.)

[14]Under the normal three-year statute of limitations of
section 6501(a), the July 2007 notice of deficiency would have
been too late with respect to the 1995-1999 returns, the latest
of which was filed in October 2000.  However, section 6501(c)(1)
provides, "In the case of a false or fraudulent return with the
intent to evade tax, the tax may be assessed * * * at any time."

three prior tax years 1995 through 1997 (for which years the charges against him had been dismissed), and the facts and issues relating to tax fraud in 1998 and 1999 are "exactly the same" as in 1995 through 1997:

> [Petitioner d]enies that the[re] was any fraud by petitioner in 1998 and 1999 and denies that the doctrine of collateral estoppel (estoppel by judgement) applies in this matter.
>
> \*      \*      \*      \*      \*      \*      \*
>
> The issues relating to tax fraud in 1998 and 1999 are exactly the same as the issues in 1995, 1996 and 1997. The exact same fact [sic] and circumstances are inextricably linked for all the years 1995 to 1999. It would be an injustice to not resolve the entire issue of fraud due to a technicality.
>
> \*      \*      \*      \*      \*      \*      \*
>
> Petitioner however knows for certain without reservation that he did not commit a tax fraud. He had neither the motive, intent or history or dishonest acts needed to commit such a fruad [sic]. Petitioner ask[s] the court to review the entire 1995 to 1999 time period in relation to the issues raised in this matter.

The Government's Rule 6(e) motion

After respondent filed the answer here, Jeffrey A. Taylor, the United States Attorney for the District of Columbia, filed with the D.C. District Court, at the request of the IRS, a motion for an order under rule 6(e) of the Federal Rules of Criminal Procedure authorizing disclosure of the grand jury evidence from Mr. Anderson's criminal case to the IRS (the Rule 6(e) motion). In his memorandum in support of the motion Mr. Taylor stated:

> [U]nless the grand jury materials are disclosed to the Internal Revenue Service, the result may clearly be an injustice.  Walter Anderson may not pay the full tax due because the Internal Revenue Service cannot fully and adequately defend against the assertions he has made in the United States Tax Court without the grand jury materials.

In support of the Rule 6(e) motion, Mr. Taylor submitted an affidavit of respondent's counsel (the Rule 6(e) affidavit) explaining as follows[15] the need for the evidence developed through the grand jury investigation:

> [The] materials from the grand jury investigation of Walter Anderson contain the evidence needed to explain and support the Internal Revenue Service determinations of additional tax, as well as to prove the fraud necessary to sustain the civil fraud penalties and to hold open the statute of limitations on assessment of the tax for 1995 through 1997.
>
> \*       \*       \*       \*       \*       \*       \*
>
> In the absence of the disclosure requested in this motion, it is likely that injustice will occur in the course of the resolution of the issues in the Tax Court cases.  The ability of the Internal Revenue Service to obtain documents and testimony from third party witnesses through pre-trial discovery is limited under Tax Court Rules, making it difficult to replicate the work of the grand jury prior to a trial of the Tax Court case.  If the Internal Revenue Service is unable to develop the evidence needed to prove Mr. Anderson's fraud to the Tax Court for 1995 through 1997 (the years not included in the guilty plea and criminal judgment) it will not only be unable to carry its burden of proof on the fraud penalties, but it may be unable to overcome the defense of the statute of limitations. [Emphasis added.]

---

[15]As is explained below, the sentences emphasized here are the basis for Mr. Anderson's motion for summary judgment.

The District Court granted the Rule 6(e) motion on April 16, 2008. However, the District Court conditioned its allowance of the disclosure on the IRS's providing an electronic copy of the grand jury evidence to Mr. Anderson. Since Mr. Anderson has no access to a computer at the Federal correctional institution where he is serving his sentence, and the IRS has yet to find an alternative means of sharing the information with him, the IRS still has no access to the grand jury evidence.

## Discussion

### I.   Allegations of the Parties

Mr. Anderson moves for summary judgment on the grounds that the IRS's statements in support of the Rule 6(e) motion-- representing that the grand jury evidence is "needed" for the IRS to prove its case, and that without such evidence respondent may be unable to carry the burden of proof or overcome the defense of the statute of limitations--constitute an admission that the IRS lacked sufficient evidence on which to base its notice of deficiency and to defend this case in the Tax Court.

Respondent cross-moves for partial summary judgment on the grounds that Mr. Anderson is collaterally estopped from contesting that he fraudulently underpaid his Federal income taxes in 1998 and 1999, because his guilty plea for criminal tax evasion under section 7201 as to 1998 and 1999 is "conclusive and binding" as to those tax years. Respondent further contends that

collateral estoppel also applies to tax years 1995 through 1997, because, in his reply, Mr. Anderson stated that the issues relating to tax fraud in 1998 and 1999 are "exactly the same" as the issues in 1995 through 1997.  In essence, respondent argues that if Mr. Anderson concedes that the issues are "exactly the same" for all five tax years at issue, and Mr. Anderson is guilty of tax fraud for two of the five tax years, then he must be guilty of tax fraud for all five of the tax years at issue.

## II.  Standard for Summary Judgment

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  The Court may grant full or partial summary judgment where there is no genuine issue of any material fact and a decision may be rendered as a matter of law.  Rule 121(b);  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  The moving party bears the burden of proving that no genuine issue of material fact exists, and the Court will view any factual material and inferences in the light most favorable to the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986);  Sundstrand Corp. v. Commissioner, supra at 520;  Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985).  If there exists any reasonable doubt as to the facts at issue, the motion must be

denied. Sundstrand Corp. v. Commissioner, supra at 520 (citing Espinoza v. Commissioner, 78 T.C. 412, 416 (1982) ("The opposing party is to be afforded the benefit of all reasonable doubt, and any inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion for summary judgment")).

The issue of whether Mr. Anderson fraudulently underpaid his Federal income taxes in 1998 and 1999 can be resolved on the basis of the undisputed facts. However, the issue of whether Mr. Anderson fraudulently underpaid his Federal income taxes in the three previous tax years, and the issue of the amounts of the deficiencies (and the fraud penalty thereon) Mr. Anderson owes for all five of the tax years at issue, remain for trial.

III. Mr. Anderson's Motion for Summary Judgment

In his motion for summary judgment, Mr. Anderson asks this Court to grant him summary judgment on all disputed issues because (i) "no valid 'Determination' was made" with respect to him under section 6212, and thus, the notice of deficiency sent to him was invalid; and (ii) the claims in the notice of deficiency and in respondent's pleadings "can not be adequately supported" by the available evidence. This is the case, he argues, because the IRS admitted that it lacks sufficient evidence on which to base the notice of deficiency and to defend this case. It made these admissions (he contends) in the

Rule 6(e) motion and the Rule 6(e) affidavit, which both request the District Court to release the grand jury evidence from Mr. Anderson's criminal case on the grounds that such evidence is likely to be "needed" for respondent to meet the burden of proof in this case.  From this purported admission, Mr. Anderson argues that he has rebutted the presumption of correctness that is normally accorded to a notice of deficiency and has shifted the burden of proof to respondent--a burden that he argues respondent admits he cannot meet because of the current lack of access to the grand jury evidence.

Thus, Mr. Anderson appears to make two distinct arguments. First, he appears to challenge whether the notice of deficiency reflects a valid determination under section 6212.  Second, he argues, in effect, that he has supported, with evidence sufficient under Rule 121, his position that he committed no fraud, and because respondent lacks the "needed" evidence from the grand jury record in his criminal case, respondent cannot raise any genuine issue of material fact, and we must grant judgment in Mr. Anderson's favor as a matter of law.

A.  The notice of deficiency reflects a valid determination.

Mr. Anderson argues that the IRS made no valid determination under section 6212 because the IRS lacked sufficient evidence on

which to base its notice of deficiency.[16]  Section 6212(a) requires the IRS to determine that a deficiency exists before issuing a notice of deficiency.  If a purported notice of deficiency reveals on its face that no determination of a tax deficiency has been made with respect to the taxpayer who is named in the notice, it does not meet the requirements of section 6212(a), and this Court has no jurisdiction to hear a case arising therefrom.  Scar v. Commissioner, 814 F.2d 1363, 1370 (9th Cir. 1987), revg. 81 T.C. 855 (1983).

However, under Campbell v. Commissioner, 90 T.C. 110, 113 (1988), if "the notice of deficiency does not reveal on its face that the Commissioner failed to make a determination, a presumption arises that there was a deficiency determination." This presumption is made "conclusive" upon the presentation of further evidence that ties the calculations in the notice of deficiency to the taxpayer who is named in the notice.  See id. For example, in Campbell we held that the existence of other supporting schedules in the IRS's case file that clearly tied the

---

[16]If Mr. Anderson were to prevail in demonstrating that there was no valid "determination" by the IRS, then the consequence would be that this Court would lack jurisdiction and would have to dismiss his petition.  In his response to respondent's memorandum in opposition to his motion for summary judgment, Mr. Anderson has clarified that he did not intend to argue that this Court lacks jurisdiction.  Rather, Mr. Anderson is "completely convinced" that this Court has jurisdiction.  As is explained below, we agree.  However, because he seems to persist with some aspects of the argument, we address it here despite his ostensible concession.

notice of deficiency to items reported on the correct taxpayer's tax return made the presumption of a valid determination conclusive.  Id.

The purpose of a notice of deficiency is to inform a taxpayer that a deficiency has been determined, specify the year for which the deficiency is determined, and state the amount of the deficiency in unequivocal terms, all in a communication sent to the right taxpayer at his last known address.[17]  In rare cases, such as Scar v. Commissioner, supra, where the calculation of the deficiency in the notice of deficiency has no connection whatsoever to the taxpayer who is named in the notice, the notice is invalid on its face.

In the instant case, the notice of deficiency is facially valid and the presumption of correctness applies, because the notice states a deficiency and the tax years for which the deficiency is determined, correctly refers to Mr. Anderson, and was sent to his last known address.  In fact, the notice of deficiency even explains the IRS's calculation of the deficiency

---

[17]See Commissioner v. Stewart, 186 F.2d 239, 242 (6th Cir . 1951); Foster v. Commissioner, 80 T.C. 34, 229-230, affd. in part and vacated in part on other grounds 756 F.2d 1430 (9th Cir. 1985); see also sec. 7522 (prescribing the content of a notice of deficiency); Shea v. Commissioner, 112 T.C. 183, 197 (1999) ("where a notice of deficiency fails to describe the basis on which the Commissioner relies to support a deficiency determination * * *, the Commissioner will bear the burden of proof").

by reference to various sections of the Internal Revenue Code.[18] Moreover, this presumption is made "conclusive", because the supporting documents attached to the notice of deficiency all directly relate to Mr. Anderson's tax returns.

Furthermore, the facts of the instant case are not analogous to the extreme facts of Scar v. Commissioner, supra, where a notice of deficiency was held to be facially invalid because the IRS made no determination with respect to the taxpayers who were named in the notice. In that case, the Commissioner acknowledged that the deficiency shown on the notice of deficiency was not based on the taxpayers' return and that the notice of deficiency referred to a tax shelter that had no connection with the taxpayers or their return. Id. at 1368. In contrast, the notice of deficiency sent to Mr. Anderson calculates a deficiency based upon Mr. Anderson's returns, his bank accounts, and the income of a company that Mr. Anderson admittedly controlled for purposes of Federal securities law. Though Mr. Anderson disputes that he owned Gold & Appel for Federal tax purposes during the tax years

---

[18]Mr. Anderson also objects that the notice of deficiency "didn't contain any explanation of the basis upon which the Internal Revenue Service 'determined' that * * * [Mr. Anderson] had any tax liability for the income of" Gold & Appel. In fact, the notice of deficiency references various sections of the Internal Revenue Code to explain the alleged items of income and penalties. Furthermore, "the Commissioner need not explain how the deficiencies were determined" for a determination and a notice of deficiency to be valid. Scar v. Commissioner, 814 F.2d 1363, 1367 (9th Cir. 1987), revg. 81 T.C. 855 (1983).

at issue, even he does not allege that he had no connection with Gold & Appel prior to receiving the notice of deficiency.  Thus, the notice of deficiency herein is not facially invalid under the rationale of <u>Scar v. Commissioner</u>, <u>supra</u>.  Rather, the notice of deficiency is valid, and we have jurisdiction to hear this case pursuant to 6213(a).

> B.    <u>Respondent raised genuine issues of material fact as to Mr. Anderson's contention that there is no evidence to support respondent's position</u>.

As noted above in part II, we grant summary judgment only if the moving party shows that no genuine issue exists as to any material fact and that the legal issues presented by the motion should be decided in favor of the moving party as a matter of law.  In his memorandum in support of his motion for summary judgment Mr. Anderson alleges that the claims in respondent's pleadings are "not supported by any evidence" and, therefore, summary judgment should be granted in his favor.  To support this contention, he cites the IRS's statements in support of its Rule 6(e) motion, in which it represented to the District Court that the grand jury evidence from his criminal case is likely to be "needed" in order to prove the IRS's case in the Tax Court.  Mr. Anderson argues that these statements constitute respondent's admission that there is insufficient evidence to defend this case.

It is true that when a party (here, respondent) has the burden of proof on an issue (here, fraud), the other party (here, Mr. Anderson) may move for summary judgment on the grounds that evidence is lacking.  The question whether the movant must instead somehow prove a negative was answered by the Supreme Court in Celotex v. Catrett, 477 U.S. 317 (1986).  Mr. Anderson does not cite Celotex, but it vindicates his apparent intuition that respondent's burden of proof on the fraud issue should affect the summary judgment dynamic:

> [T]he plain language of Rule 56(c) [equivalent to Tax Court Rule 121(b)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. * * * [Id. at 322-323.]

Mr. Anderson does cite Anastasato v. Commissioner, 794 F.2d 884, 887 (3d Cir. 1986) (citation omitted), which holds that--

> a court must not give effect to the presumption of correctness [of a deficiency determination] in a case involving unreported income if the Commissioner cannot present "some predicate evidence connecting the taxpayer to the charged activity." * * *[19]

---

[19]Anastasato goes on to say, "Most of the cases stating that
(continued...)

Mr. Anderson cites Anastasato as pertinent to his own situation, where (he says) respondent admittedly "needs" still-unavailable grand jury information and therefore lacks evidence to support the determination of fraud. Since (Mr. Anderson argues) respondent has no evidence to connect him with the alleged unreported income, the IRS's determination can have no presumption of correctness under Anastasato. And, if Mr. Anderson were right as to the state of the evidence, he could round out the argument by stating that because respondent has no evidence to carry the burden of proof on the fraud issue, Mr. Anderson is entitled to prevail on summary judgment.

However, Mr. Anderson has in fact failed to show that no genuine issue exists as to any material fact. Contrary to Mr. Anderson's claims, respondent does have evidence of civil tax fraud in all five tax years at issue.[20] Though Mr. Anderson correctly notes that the IRS has been unable to access the "needed" grand jury evidence from his criminal case, the IRS does

---

[19](...continued)
the Commissioner is not entitled to the presumption based on a naked assessment without factual foundation have involved illegal income. * * * Given the obvious difficulties in proving the nonreceipt of income, we believe the Commissioner should have to provide evidence linking the taxpayer to the tax-generating activity in cases involving unreported income, whether legal or illegal." Id. at 887.

[20]In fact, as is explained below in part IV.B, Mr. Anderson is collaterally estopped from contesting that he fraudulently underpaid his income taxes for tax years 1998 and 1999.

have access to his indictments for criminal tax evasion in 1995 through 1999,[21] his guilty plea for criminal tax evasion in 1998 and 1999,[22] and the statements he and his counsel made on the record at his plea hearing.

Furthermore, Mr. Anderson's reliance on Anastasato is misplaced.  Though Mr. Anderson correctly states the rule of Anastasato, he has failed to show that respondent lacks "some predicate evidence" connecting him with Gold & Appel and its income.  Instead, Mr. Anderson admits that he controlled Gold & Appel for purposes of Federal securities law; and like the taxpayer in Anastaso, Mr. Anderson is connected with the "charged activity" of fraudulently underpaying his income taxes by sufficient "predicate evidence"--including his superseding indictment, his guilty plea, and the statements he and his counsel made at his plea hearing.  Therefore, the presumption of

---

[21]Respondent can rely on the indictment.  See Whitfield v. Commissioner, T.C. Memo. 1972-139, 31 TCM (CCH) 654, 663 (1972) ("At the trial, respondent urged that petitioner was collaterally estopped from asserting her cash hoard defense.  The * * * indictment * * * was admissible in connection with that allegation").  A grand jury's indictment that led to a conviction is admissible under the hearsay exception of Fed. R. Evid. 803(22) ("Judgment of previous conviction").  See Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 412 (6th Cir. 2006).

[22]See Mitchell v. Commissioner, T.C. Memo. 1982-162 (listing a guilty plea for criminal tax evasion in 1968 under sec. 7201, among other things, as evidence to prove fraud in 1968 through 1971), affd. without published opinion 720 F.2d 679 (6th Cir. 1983).

correctness applies to the IRS's determination in the instant case.

Since respondent has presented evidence of civil tax fraud in the form of Mr. Anderson's guilty plea for criminal tax evasion in 1998 and 1999 and his indictments for criminal tax evasion in 1995 through 1999, we hold that Mr. Anderson has failed to show that no genuine issue exists as to any material fact, and his request for summary judgment will be denied.

Even if respondent's evidence were insufficient to raise, for the years 1995 through 1997, a genuine issue of material fact as to Mr. Anderson's motion, the motion should still be denied. Rule 121(e) provides:

> If it appears from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify such party's opposition, then the Court may deny the motion or may order a continuance to permit affidavits to be obtained or other steps to be taken or may make such other order as is just. * * * [Emphasis added.]

Respondent's opposition includes the affidavit submitted in support of the Government's Rule 6(e) motion before the District Court, and the District Court's order granting that motion. The IRS has demonstrated (both to that court and here) that it is entitled to get the information that the Government developed during its investigation and prosecution of Mr. Anderson. The only reason that it does not yet have that information is that Mr. Anderson is still incarcerated, and the IRS therefore cannot

fulfill a precondition of receiving the Rule 6(e) information--
i.e., it cannot yet share it with Mr. Anderson.  That is, the IRS
is being deprived of the information because Mr. Anderson is
incarcerated for committing a crime.  This Court could hardly let
Mr. Anderson's criminally adjudicated guilt become a reason that
he prevails in the civil suit (by blocking the IRS's receipt of
information).  Rather, even if it were true that, for 1995
through 1997, respondent were unable to submit sufficient
evidence to oppose summary judgment, the Court would deny
Mr. Anderson's motion and defer any summary adjudication of its
issues until respondent has had a reasonable opportunity to
obtain the Rule 6(e) information and to conduct reasonable
followup discovery.

IV.  Respondent's Motion for Partial Summary Judgment

A.    To prevail in this case, respondent must prove fraud.

The issue raised is whether Mr. Anderson is liable for
penalties for fraud for the tax years at issue under section
6663.  Respondent bears the burden of proving civil tax fraud.
See sec. 7454(a); Rule 142(b).  If respondent fails to prove
fraud, then the statute of limitations may prevent the IRS from
assessing and collecting any of the deficiencies or penalties.
See sec. 6501(a).

Mr. Anderson filed income tax returns for 1995, 1996, 1997,
1998, and 1999 on April 15, 1996, June 21, 1997, August 31, 1998,

September 30, 1999, and October 19, 2000, respectively.  The IRS issued a notice of deficiency with respect to tax years 1995 through 1999 to Mr. Anderson on July 17, 2007.  Generally, the IRS must assess a deficiency within three years of the date on which the tax return that relates to the deficiency was filed. Sec. 6501(a).  Here, more than three years has elapsed between the filing date of Mr. Anderson's tax return for each of the five tax years at issue and the date of issuance of the notice of deficiency, which is the first step in the process of assessing a deficiency.  If the general rule of section 6501(a) applies, then the IRS has failed to assess the deficiency within the period of limitations and is barred from assessing and collecting any of the deficiencies or additions to tax for the five tax years at issue.  However, if the deficiency is attributable to fraud, then the IRS may assess the deficiency at any time.  See sec. 6501(c)(1).  Thus, the entirety of the instant case may turn on whether Mr. Anderson is liable for fraud under section 6663. Because Mr. Anderson entered a plea of guilty to the charge under section 7201 of willfully attempting to evade or defeat income tax in 1998 and 1999, but not in 1995 through 1997, we will bifurcate our treatment of the fraud issue and first deal with 1998 and 1999 and respondent's assertion of collateral estoppel as to those tax years.

B.  Collateral estoppel bars Mr. Anderson's relitigation of his fraud as to the years 1998 and 1999.

1.  Mr. Anderson's plea of attempting to evade or defeat tax establishes his fraud.

Respondent asserts that Mr. Anderson's guilty plea to two counts of criminal tax evasion under section 7201 with respect to tax years 1998 and 1999 should collaterally estop him from contesting that he fraudulently underpaid his income taxes in those tax years.  In Montana v. United States, 440 U.S. 147, 153-154 (1979), the Supreme Court explained the doctrine of collateral estoppel as follows:

> Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.

The three Internal Revenue Code sections involved in this collateral estoppel question are section 7201 (defining the crime of "attempt[ing] * * * to evade or defeat any tax"), section 6501(c)(1)[23] (permitting an assessment of tax at any time "[i]n the case of a false or fraudulent return with the intent to

---

[23]Respondent's answer also asserts that section 6501(c)(8) (tolling the statute of limitation for assessment of tax until the date which is three years after the filing date of the information return that relates to such tax) applies with respect to Mr. Anderson's alleged subpart F income from Gold & Appel, because of his alleged failure to file a Form 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, for Gold & Appel and Iceberg Transport for each of the five tax years at issue.  However, because neither party addresses section 6501(c)(8) in connection with the pending cross-motions, we do not address this issue here.

evade tax"), and section 6663(a) (imposing a civil penalty for underpayments "due to fraud").  Mr. Anderson was previously convicted of "attempt[ing] * * * to evade or defeat" his income tax liability for 1998 and 1999 (under section 7201), whereas the issues now before us are whether he filed "false or fraudulent return[s] with the intent to evade tax" (under section 6501(c)(1)), and whether he had tax underpayments "due to fraud" (under section 6663).  Though the "evade or defeat" wording of the criminal statute does not include the "fraud" vocabulary of the two civil statutes, an evasion conviction established fraud.  We have repeatedly held that "[a] taxpayer is collaterally estopped from denying civil tax fraud under section [6663] * * * when convicted for criminal tax evasion under section 7201 for the same taxable year."  DiLeo v. Commissioner, 96 T.C. 858, 885 (1991), affd. 959 F.2d 16 (2d Cir. 1992).[24]

_____

[24]See also Amos v. Commissioner, 43 T.C. 50, 55 (1964) ("one who 'willfully attempts * * * to evade * * * tax' within the meaning of the criminal sanction does so with the requisite fraudulent intent for the purpose of the civil sanction"), affd. 360 F.2d 358 (4th Cir. 1965); Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68, 74-75 (1964) ("This conviction [for criminal tax fraud] necessarily carries with it the ultimate factual determination that the resulting deficiency * * * was [attributable to civil tax fraud]"); Montalbano v. Commissioner, T.C. Memo. 2007-349, 94 TCM (CCH) 499, 500 ("It is well established that a final criminal judgment for tax evasion under section 7201 collaterally estops relitigation of the issue of fraudulent intent in a subsequent proceeding over the civil fraud penalty"), affd. without published opinion 103 AFTR 2d 379, 2009-1 USTC par. 50,153 (11th Cir. 2009); Uscinski v. Commissioner, T.C. Memo. 2006-200, 92 TCM (CCH) 285, 287 ("Because the
(continued...)

   2. <u>Mr. Anderson's arguments against collateral estoppel lack merit</u>.

  Mr. Anderson contends that we should disregard his criminal conviction and that collateral estoppel therefrom should not constrain him in the current civil litigation, because (he says) (i) he pleaded guilty under duress to escape the poor conditions of the D.C. jail, (ii) he did not allocute to any specific facts in his guilty plea to which collateral estoppel could apply, (iii) the evidence before this Court is materially different from the evidence in his criminal case, (iv) his criminal case is unresolved because he intends to file a "2255 motion" at some time in the future, and (v) some caselaw exists to support his contention that a taxpayer is not necessarily collaterally estopped from denying civil tax fraud under section 6663 in a Tax

---

  [24](...continued)
elements of criminal tax evasion and civil tax fraud are identical, petitioner's prior conviction under section 7201 conclusively establishes the elements necessary for finding fraud under section 6663"); <u>Wilson v. Commissioner</u>, T.C. Memo. 2002-234, 84 TCM (CCH) 321, 324 ("We hold that the doctrine of collateral estoppel bars * * * [the taxpayer convicted under section 7201] from relitigating in the instant case the matters litigated in * * * [the taxpayer's] criminal tax proceeding, i.e., whether * * * [the taxpayer] underpaid his tax for each of the taxable years * * * and whether his underpayment of such tax for each such year was due to fraud"). Because a conviction for criminal tax evasion under section 7201 conclusively establishes civil tax fraud under section 6663 in the same tax year, the unlimited statute of limitations of section 6501(c)(1) is also applicable. See <u>DiLeo v. Commissioner</u>, <u>supra</u> at 885; <u>Amos v. Commissioner</u>, <u>supra</u> at 55.

Court proceeding when convicted for criminal tax evasion under section 7201 for the same taxable year.

### a. Duress

Mr. Anderson alleges that he pleaded guilty only because of the conditions under which he was confined in the D.C. jail pending trial.  For that reason he contends that we should disregard his guilty plea to the counts under section 7201.  This argument cannot avail.

It is true that a conviction can be set aside upon a showing that the defendant's plea was coerced or otherwise improper, but that relief generally must be requested either in a direct appeal from the court that entered the conviction or in a habeas proceeding.[25]  The facts about the D.C. jail that Mr. Anderson alleges in order to undermine the voluntary character of his plea were explicitly on the record at his plea hearing in the D.C. District Court.  Those allegations were heard by the District

---

[25]See Fed. R. Crim. P. 11(e) ("After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack"); Connors v. Graves, 538 F.3d 373, 378 (5th Cir. 2008) (plaintiff sued police officers for use of excessive force after pleading guilty to discharging a weapon in the altercation with such officers; the court held that the lawsuit amounted to a contention that the plaintiff "admitted to something other than the crime for which he was convicted", which "constitutes a claim that his guilty plea was not knowing and voluntary--an issue properly raised only in either a direct appeal or a habeas proceeding").

Court judge who carefully examined Mr. Anderson to assure that the plea was knowing and voluntary and then accepted his plea.

However, we need not attempt to anticipate what the District Court might do if it were asked to set aside the plea, because Mr. Anderson has taken no action in the D.C. District Court to withdraw his guilty plea or to challenge the conviction based on the plea (perhaps because he sees that such a request would be futile).[26]  Mr. Anderson's attempted collateral attack in the Tax Court on the validity of his previous conviction in the District Court is improper.  An issue resolved in favor of the United States in a criminal prosecution may not be contested by the same defendant in a civil suit.  Tomlinson v. Lefkowitz, 334 F.2d 262, 264 (5th Cir. 1964) (citing Local 167, Intl. Bhd. of Teamsters v. United States, 291 U.S. 293 (1934), and Emich Motors Corp. v. Gen. Motors Corp., 340 U.S. 558, 568-569 (1951)); Ochs v. Commissioner, T.C. Memo. 1986-595, 52 TCM (CCH) 1218, 1220 ("A civil proceeding is an inappropriate vehicle for a collateral attack on a previous criminal proceeding").  Thus, Mr. Anderson's conviction for violating section 7201 is a final judgment from which collateral estoppel lies.

---

[26]Mr. Anderson has professed an intention to challenge his sentence by filing a 2255 motion, discussed infra in part IV.B.2.d.

### b. Allocution to Specific Facts

Mr. Anderson alleges that he did not allocute or admit to any specific facts in his guilty plea to which collateral estoppel could apply. He bases this argument, in large part, on a statement that he made at his plea hearing:

> THE DEFENDANT: Yes. However, <u>we don't agree with all of the allegations</u> of the government, but I am agreeing to plead guilty to those charges. [Emphasis added.]

If a defendant pleads guilty but denies particular allegations in the indictment, then it is possible that collateral estoppel will not bind the defendant to those denied allegations,[27] but Mr. Anderson failed to specifically deny any particular fact, allegation, or issue in the indictment or plea agreement at his plea hearing or otherwise--he merely stated that he did not agree with "all of the allegations of the government".

Furthermore, Mr. Anderson did allocute to specific facts at his plea hearing. His defense counsel stated--and Mr. Anderson agreed--that "over the years" he retained control over the assets of Gold & Appel and was required to pay taxes on the gains from

---

[27]See <u>United States v. Tolson</u>, 988 F.2d 1494, 1501 n.6 (7th Cir. 1993) ("absent evidence that the defendant reserved the issue in the plea, he may not challenge the facts in the indictment and plea agreement") (quoting <u>United States v. Gilliam</u>, 987 F.2d 1009, 1014 (4th Cir. 1993) ("'a plea of guilty to an indictment containing an allegation of the amount of drugs for which a defendant is responsible may, in the absence of a reservation by the defendant of his right to dispute the amount at sentencing, constitute an admission of that quantity for sentencing purposes'")).

those assets by Federal law.  Mr. Anderson also agreed that for purposes of computing his sentence, the Government could prove that the total tax loss was in excess of $100 million.[28]  Finally, when the District Court judge asked Mr. Anderson whether he was "pleading guilty to [tax evasion] voluntarily and because [he is] guilty", Mr. Anderson responded "Yes."

Morever, a "plea of guilty * * * is a conclusive judicial admission of all of the essential elements of the offense which the indictment charges."  Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68, 75 (1964).  Therefore, in addition to his allocutions, Mr. Anderson admitted and is estopped from contesting the existence of the essential elements of criminal tax evasion with respect to tax years 1998 and 1999, which are "identical" to the elements of civil tax fraud.  See Uscinski v. Commissioner, T.C. Memo. 2006-200.

### c.    Change in Evidence

Mr. Anderson alleges that "three significant and material evidentiary changes have occurred [since his criminal case] which completely change the complexion of the issues that the Tax Court will now consider."  For that reason he contends that the facts

---

[28]The Court of Appeals for the Third Circuit (to which an appeal in this case would lie) has held that "facts relevant to sentencing contained in the indictment and plea agreement are conclusively established by the entry of a guilty plea even if they are not elements of the offense charged."  United States v. Dickler, 64 F.3d 818, 823 n.7 (3d Cir. 1995) (citing United States v. Parker, 874 F.2d 174, 178 (3d Cir. 1989)).

before this Court are "so dissimilar" from the facts before the District Court in his criminal case that collateral estoppel should not apply.  This argument cannot avail.

The three items that Mr. Anderson cites are (i) a report prepared at his request by Eisner LLP, an accounting and advisory firm, which analyzes Mr. Anderson's relationship to Gold & Appel and concludes, among other things, that he intended to legally avoid (rather than to criminally evade) Federal income taxes on the company's income; (ii) a Washington Post article[29] that asserts the Government "has doubts about whether Anderson has any sizable assets hidden abroad" on the basis of two anonymous "law enforcement sources familiar with the case", which Mr. Anderson construes to be an admission on the part of the Government that he is not hiding assets overseas; and (iii) respondent's admission, in the answer, that Mr. Anderson formed the Smaller World Trust in 1993.

As we noted (supra note 5), the Court permitted respondent to amend the answer and withdraw the admission that Mr. Anderson formed the Smaller World Trust in 1993, and therefore Mr. Anderson cannot rely on that admission.  Neither the report by Eisner LLP nor the Washington Post article affects the application of collateral estoppel in this case.  Quite apart

---

[29]Leonnig, "Prosecutors' Slip Keeps Money in Limbo", Wash. Post, Mar. 29, 2007, at B6.

from any hearsay or other evidentiary issues that would preclude reliance on those materials, the fact that Mr. Anderson has pleaded guilty to criminal tax evasion with respect to tax years 1998 and 1999 remains. A "plea of guilty * * * is a conclusive judicial admission of all of the essential elements of the offense which the indictment charges." Arctic Ice Cream Co. v. Commissioner, supra at 75. Therefore, even if we were to find the report by Eisner LLP or the Washington Post article to be persuasive, Mr. Anderson has admitted and is estopped from contesting the existence of the essential elements of criminal tax evasion with respect to tax years 1998 and 1999.

### d. Mr. Anderson's Anticipated 2255 Motion

Mr. Anderson alleges that his criminal case is unresolved because he intends to file a "2255 motion" under 28 U.S.C. section 2255. For that reason, he contends that "[t]he matters related to his plea agreement which relates to tax years 1998 and 1999 are still open, have not been finally determined and thus collateral estoppel should not apply in this instance." This argument cannot avail.

No court has granted Mr. Anderson any relief under 28 U.S.C. section 2255, nor has he even filed any motion requesting such relief, so it would be speculative for this Court to imagine how the granting of such a motion might impact the finality of Mr. Anderson's criminal conviction for purposes of collateral

estoppel in this or other civil cases. "It is the general rule that issue preclusion attaches only 'when an issue of fact or law is * * * determined by a valid and final judgment'", Arizona v. California, 530 U.S. 392, 414 (2000) (quoting 1 Restatement, Judgments 2d, sec. 27 (1982)); and Mr. Anderson's conviction is valid and final. Mr. Anderson has cited no authority, and the Court is aware of none, to suggest that a criminal conviction lacks finality for purposes of collateral estoppel unless and until all potential 2255 motions are resolved.[30] Thus, the possibility that Mr. Anderson may file a 2255 motion does not affect the application of collateral estoppel in this case.

---

[30]Rather, public policy and judicial economy would seem to weigh in favor of respecting the finality of criminal convictions in civil matters regardless of the possible pendency of a "2255 motion". Cf. Estate of Lunt v. Gaylor, No. 04-CV-398-PB (D.N.H., Aug. 4, 2005) ("several other courts have determined that it would be injurious to allow defendants to use habeas corpus as a tool to bar collateral estoppel"); Mueller v. J.C. Penney Co., 219 Cal. Rptr. 272, 277 (Ct. App. 1985) ("For purposes of collateral estoppel, a judgment free from direct attack is a final judgment"); 1 Restatement, Judgments 2d, sec. 13, cmt. g (1982) ("To hold invariably that * * * [collateral estoppel] is not to be permitted until a final judgment in the strict sense has been reached in the first action can involve hardship -- either needless duplication of effort and expense in the second action to decide the same issue, or, alternatively, postponement of decision of the issue in the second action for a possibly lengthy period of time until the first action has gone to a complete finish. In particular circumstances the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment").

e.   Application of Collateral Estoppel to
     Criminal Convictions in the Tax Court

Mr. Anderson argues--citing three opinions from this Court--
that a taxpayer is not necessarily collaterally estopped from
denying civil tax fraud under section 6663 in a Tax Court
proceeding when convicted for a tax crime for the same taxable
year.  However, Mr. Anderson's reliance on Jondahl v.
Commissioner, T.C. Memo. 2005-55, Bierschbach v. Commissioner,
T.C. Memo. 1988-199, and Nigra v. Commissioner, T.C. Memo.
1968-273, is misplaced.

Jondahl and Bierschbach both involved convictions for filing
a false return under section 7206(1), a conviction that does not
prove civil tax fraud under section 6663.  Wright v.
Commissioner, 84 T.C. 636, 643 (1985).  Mr. Anderson's
conviction, on the other hand, was for "attempt[ing] * * * to
evade or defeat any tax" under section 7201, a conviction that
does prove fraud under section 6663.  See supra part IV.B.1.

Nigra, on the other hand, involved a plea of nolo
contendere--not a guilty plea.  "A plea of nolo contendere by a
taxpayer to a charge of criminal tax fraud and resulting
conviction do not bar him from disputing the imposition of civil
fraud penalties for the same taxable years", because "[t]he
doctrine of collateral estoppel raised by a plea of guilty to
criminal tax fraud is not applicable to a plea of nolo
contendere."  Vazquez v. Commissioner, T.C. Memo. 1993-368,

66 TCM (CCH) 406, 415 n.12 (citing <u>Doherty v. Am. Motors Corp.</u>, 728 F.2d 334, 337 (6th Cir. 1984), <u>Hicks Co. v. Commissioner</u>, 56 T.C. 982, 1027 (1971), affd. 470 F.2d 87 (1st Cir. 1972), and <u>Godfrey v. Commissioner</u>, T.C. Memo. 1968-199)).  Mr. Anderson, however, entered a plea of guilt, not a plea of nolo contendere; and a guilty plea resulting in a conviction for criminal tax evasion under section 7201 conclusively establishes fraud in a subsequent civil tax fraud proceeding through the application of the doctrine of collateral estoppel.  <u>DiLeo v. Commissioner</u>, 96 T.C. at 885; <u>Marretta v. Commissioner</u>, T.C. Memo. 2004-128, affd. 168 Fed. Appx. 528 (3d Cir. 2006).

    C.   <u>Partial summary judgment is appropriate here</u>.

Respondent has moved only for partial summary judgment. Respondent requests a holding that Mr. Anderson committed fraud but defers the question of the amounts of his liabilities. Mr. Anderson argues that it serves no purpose for this Court to rule on whether an underpayment in any of the tax years at issue is due to fraud before it has determined the amount, if any, of the underpayment.  He observes that if the amount of the underpayment for a given year is later found to be zero, then there would be no fraud penalty.  However, this scenario is not possible here.  "'[T]he doctrine of collateral estoppel bars * * * [the taxpayer convicted under section 7201] from relitigating in the instant case the matters litigated in * * * [the

taxpayer's] criminal tax proceeding, i.e., whether * * * [the taxpayer] underpaid his tax for each of the taxable years * * * and whether his underpayment of such tax for each such year was due to fraud.'" Christians v. Commissioner, T.C. Memo. 2008-220 (quoting, with alterations, Wilson v. Commissioner, T.C. Memo. 2002-234). Thus, Mr. Anderson is collaterally estopped from litigating whether there is an underpayment (however small) in either year and whether any such underpayment is due to fraud. Furthermore, in his allocution at his plea hearing, Mr. Anderson specifically conceded, for purposes of computing his sentence, that the Government could prove that the total tax loss for tax years 1998 and 1999 was in excess of $100 million. See supra p. 14. He cannot now deny that fact.

Therefore, we hold that respondent has shown that he is entitled to summary judgment with respect to the issue of whether collateral estoppel applies to establish civil tax fraud in 1998 and 1999. We hold that the statute of limitations does not bar assessment of Mr. Anderson's tax liability for those years and that he will be liable for the fraud penalty. However, the issue of the amounts of the deficiencies of tax and penalties in 1998 and 1999 remains for trial.

D. <u>On the record before us, collateral estoppel does not bar Mr. Anderson's litigation of fraud as to the years 1995 through 1997</u>.

Respondent asserts that Mr. Anderson's guilty plea to two counts of criminal tax evasion under section 7201 with respect to tax years 1998 and 1999 should collaterally estop him from contesting that he fraudulently underpaid his income taxes in 1995 through 1997. However, Mr. Anderson did not enter a guilty plea for tax years 1995 through 1997; rather, those charges were dismissed.

As noted above, the burden of proving fraud under section 6663 is on respondent. See sec. 7454(a); Rule 142(b). Furthermore, a guilty plea to criminal tax evasion under section 7201 in one tax year conclusively establishes fraud in that year, but not in other tax years. "[P]roof of fraud for one year will not sustain the respondent's burden of proving fraud in another year." <u>Estate of Hanna v. Commissioner</u>, T.C. Memo. 1976-32, 35 TCM (CCH) 128, 135 (citing <u>McLaughlin v. Commissioner</u>, 29 B.T.A. 247, 249 (1933)). Thus, the mere fact that Mr. Anderson had pleaded guilty to tax evasion in 1998 and 1999 could not, by itself, be determinative of whether he had fraudulently underpaid his income taxes in the prior years 1995 through 1997.

However, to the mere fact of Mr. Anderson's 1998 and 1999 guilty plea respondent adds the observation that, in his reply, Mr. Anderson has admitted that the facts and issues relating to

tax fraud in 1998 and 1999--tax years in which we have held that he is collaterally estopped from denying that he committed civil tax fraud--are "exactly the same" as the issues in 1995 through 1997.[31]  Respondent argues that since Mr. Anderson is guilty of tax fraud in 1998 and 1999, and since Mr. Anderson stated that the facts and issues are "exactly the same" in all five tax years at issue (1995 through 1999), he must be liable for civil tax fraud in all five tax years.

Respondent makes this argument under the rubric of collateral estoppel, but the argument in fact rests on two conjoined principles--i.e., collateral estoppel and judicial admission.  Respondent argues that Mr. Anderson is barred by collateral estoppel from denying fraud in 1998 and 1999; that he is bound (in effect, by judicial admission) to his assertion that the facts and issues are the same in all five years; and that his guilt as to the later years should therefore be extrapolated to the earlier years.

However, this argument draws unwarranted inferences from Mr. Anderson's statement, deeming him to have admitted things

---

[31]Respondent latches on to the fact that Mr. Anderson, in his reply, stated that "The issues relating to tax fraud in 1998 and 1999 are exactly the same as the issues in 1995, 1996 and 1997.  The exact same fact [sic] and circumstances are inextricably linked for all the years 1995 to 1999."  However, the petition itself had stated that the "issues" for 1998 and 1999 "are identical to 1995"--but the petition clearly professes Mr. Anderson's innocence as to all five years.

that in fact he has explicitly denied.  Mr. Anderson made his statement (that the facts and issues are "exactly the same" in all five of the tax years at issue) in the context of professing his innocence--not admitting his guilt--and of protesting the application of collateral estoppel to 1998 and 1999.  In essence, Mr. Anderson argues that he is innocent of tax fraud as to 1995 through 1997 (years for which the charges were dismissed); that the issues relating to tax fraud in 1998 and 1999 are "exactly the same" as the issues in 1995 through 1997; and that his asserted innocence as to the earlier years should therefore be extrapolated to the later years.  He argues that he is innocent of tax fraud in 1998 and 1999 and that it would be an "injustice" to apply the doctrine of collateral estoppel--a mere legal "technicality" in his eyes--to prevent him from proving his innocence in those tax years.  While we reject Mr. Anderson's argument as to 1998 and 1999 (the years as to which he pleaded guilty), we decline to hold that his protestations of innocence in those later tax years somehow constitute a backhanded admission of guilt in the earlier years.

Instead, we hold that, on the record now before us, respondent has failed to show that no genuine issue exists as to any material fact with respect to the question of whether Mr. Anderson fraudulently underpaid his Federal income taxes in

1995 through 1997, and respondent's request for partial summary judgment with respect to those earlier tax years will be denied.

We do not hold today that the question of collateral estoppel is exhausted in this case as to the years 1995 through 1997. Respondent has failed in his broad attempt to use the doctrine to invoke Mr. Anderson's conviction for 1998 and 1999 in order to impose an ultimate finding of fraud for 1995 through 1997; but a more focused presentation of the facts underlying Mr. Anderson's conviction may resolve some of the factual and legal issues still in the case. A "plea of guilty * * * is a conclusive judicial admission of all of the essential elements of the offense which the indictment charges," Arctic Ice Cream Co. v. Commissioner, 43 T.C. at 75; and it is possible that such "elements" could, with a fuller record, be demonstrated to be relevant to (and binding on) the earlier years. That is, there may be facts that were essential to Mr. Anderson's guilty plea as to 1998 and 1999, that are relevant to the years 1995 through 1997, and that he would be estopped from denying--but that are not yet in the record here.[32] In addition, Mr. Anderson's defense counsel's statement that "he admits that over the years he retained control over the assets, and was required under U.S. law to pay taxes on the gains from those assets", see supra p. 14,

---

[32]See supra note 8 (allegations "incorporated by reference" into Counts Five and Six of Mr. Anderson's indictment are not yet in the record here).

may have significance, not yet articulated here, for the years 1995 through 1997.[33]  For these reasons, today's partial denial of respondent's motion is without prejudice to his renewing that motion with a better record and more focused contentions.

To reflect the foregoing,

<u>An appropriate order will be</u>

<u>issued</u>.

---

[33]The Court is mindful that if a defendant pleads guilty but denies particular allegations in the indictment, then collateral estoppel may not bind the defendant to those denied allegations. See <u>supra</u> part IV.B.2.b.  Of course, what will be relevant in that connection is Mr. Anderson's actual denials before the District Court, rather than his subsequent characterizations of those denials.  Cf. <u>supra</u> note 13.